UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF NEW YORK,<br><br>                              Plaintiff,<br><br>                    v.<br><br>BP P.L.C.; CHEVRON CORPORATION;<br>CONOCOPHILLIPS; EXXON MOBIL<br>CORPORATION; and ROYAL DUTCH<br>SHELL PLC,<br><br>                              Defendants. | Case No. 18-cv-182-JFK |

**PLAINTIFF THE CITY OF NEW YORK'S MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................3

    A.  Defendant fossil fuel producers have knowingly contributed to
        severe global warming injuries to New York City. ......................................3

    B.  States and cities have significant interests in climate change.................................6

    C.  The Clean Air Act does not regulate fossil fuel production or sales;
        other federal statutes relating to climate change provide for
        research and study.............................................................................................7

III. STANDARD OF REVIEW .......................................................................................8

IV. ARGUMENT .............................................................................................................8

    A.  The City's claims are viable under New York law.............................................8

        1.  The City has stated proper nuisance and trespass claims. ...........................8

        2.  The City has properly alleged proximate cause.........................................11

        3.  The City expressly pled lack of justification or permission. .....................11

        4.  The City's claims are not barred by the *in pari delicto*
            doctrine. ...................................................................................................12

    B.  The City's claims are not barred by any federal doctrine.....................................12

        1.  The City's claims are not preempted by U.S. foreign policy....................12

        2.  The City's lawsuit is not an impermissible control on
            extraterritorial commerce........................................................................14

        3.  The City's claims do not violate the due process or takings
            clauses......................................................................................................17

        4.  The City's claims are not preempted by federal statutes. ..........................18

    C.  The City's claims are justiciable and it has standing.............................................21

        1.  The City's claims present a justiciable case or controversy. .....................21

        2.  The City's claims do not present political questions. ................................23

3.     The City has standing..................................................................23

D.     Federal common law does not require dismissal. ...................................26

1.     Defendants fail to demonstrate that federal common law
       displaces state law.................................................................26

2.     Alternatively, the City has stated a proper federal common
       law claim. .........................................................................30

       a)     If federal law applies, the Clean Air Act does not
              displace a federal common law claim against
              producers of fossil fuels. ...........................................31

       b)     If federal law applies, the City has pled viable
              claims. ...............................................................33

V.     CONCLUSION................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*22 Irving Place Corp. v. 30 Irving LLC*,
  57 Misc. 3d 253 (N.Y. Sup. Ct. 2017) .................................................................12

*In re "Agent Orange" Prod. Liab. Litig.*,
  635 F.2d 987 (2d Cir. 1980)........................................................................27, 28

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
  2010 WL 2077214 (S.D.N.Y. May 14, 2010) .......................................................25

*Allco Fin. Ltd. v. Klee*,
  861 F.3d 82 (2d Cir. 2017)........................................................................................16

*Allen v. Wright*,
  468 U.S. 737 (1984)........................................................................................25, 26

*Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*,
  134 F. Supp. 3d 1270 (D. Or. 2015), *appeal pending*, No. 15-35834 (9th Cir.) ...................21

*Am. Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003)........................................................................................12, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................8

*Ass'n of Taxicab Operators, USA v. City of Dallas*,
  866 F. Supp. 2d 595 (N.D. Tex. 2012), *aff'd*, 720 F.3d 534 (5th Cir. 2013)...........................18

*In re Assicurazioni Generali, S.p.A.*,
  592 F.3d 113 (2d Cir. 2010)....................................................................................14

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003)....................................................................................24

*Berenger v. 261 W. LLC*,
  640 N.Y.S.2d 4 (N.Y. App. Div. 2012) .................................................................9

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)........................................................................................15, 17

*Boomer v. Atl. Cement Co.*,
  26 N.Y.2d 219 (1970) ................................................................... *passim*

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978)................................................................................................17

*California v. BP P.L.C.*,
   2018 WL 1064293 (N.D. Cal. Feb. 27, 2018) ...............................................30, 32

*California v. General Motors Corp.*,
   2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) ......................................................33

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit L.P.*,
   491 B.R. 335 (S.D.N.Y. 2013)................................................................................26

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*,
   529 F. Supp. 2d 1151 (E.D. Cal. 2007)..................................................................14

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018)....................................................................................8

*City of New York v. A.E. Sales LLC*,
   2005 WL 3782442 (S.D.N.Y. Feb. 9, 2005)...........................................................10

*City of New York v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) ...................................................................10

*City of New York v. Milhelm Attea & Bros., Inc.*,
   550 F. Supp. 2d 332 (E.D.N.Y. 2008) ...................................................................10

*City of Providence, Rhode Island v. Bats Global Mkts., Inc.*,
   878 F.3d 36 (2d Cir. 2017)......................................................................................8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................................24

*Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*,
   272 F. Supp. 3d 554 (S.D.N.Y. 2017), *appeal pending*, No. 17-2654 (2d Cir.).......................6

*Comer v. Murphy Oil USA*,
   585 F.3d 855 (5th Cir. 2009), *vacated*, 598 F.3d 208 (5th Cir. 2010), *appeal
   dismissed*, 607 F.3d 1049 (5th Cir. 2010) ..............................................................23

*Comer v. Murphy Oil USA, Inc.*,
   839 F. Supp. 2d 849 (S.D. Miss. 2012), *aff'd on other grounds*, 718 F.3d 460
   (5th Cir. 2013)........................................................................................................33

*Commonwealth Edison Co. v. United States*,
   271 F.3d 1327 (Fed. Cir. 2001)..............................................................................34

*Connecticut v. Am. Elec. Power Corp.*,
   582 F.3d 309 (2d Cir. 2009), *aff'd in rel. part, rev'd on other grounds*, 564
   U.S. 410 (2011)........................................................................................... *passim*

*North Carolina ex rel. Cooper v. TVA*,
 615 F.3d 291 (4th Cir. 2010) .................................................20

*Copart Indus., Inc. v. Consol. Edison Co.*,
 41 N.Y. 2d 564 (1977) ...............................................9, 21

*Corrie v. Caterpillar*,
 503 F.3d 974 (9th Cir. 2007) ........................................23

*County of Oneida v. Oneida Indian Nation*,
 470 U.S. 226 (1985).................................................31

*County of San Mateo v. Chevron Corp.*,
 2018 WL 1414774 (N.D. Cal. Mar. 16, 2018), *appeal pending*, No. 18-15499
 (9th Cir.)....................................................29, 32, 33

*Cox v. City of Dallas*,
 256 F.3d 281 (5th Cir. 2001) ........................................9, 21

*Cox v. Vill. of Pleasantville*,
 271 F. Supp. 3d 591 (S.D.N.Y. 2017)................................35

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000)..................................................14

*Ctr. for Biological Diversity v. Dep't of Interior*,
 563 F.3d 466 (D.C. Cir. 2009)......................................24

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006).................................................22

*Diamond v. Chakrabarty*,
 447 U.S. 303 (1980).................................................22

*Eastern Enters. v. Apfel*,
 524 U.S. 498 (1998).................................................17

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
 396 F.3d 136 (2d Cir. 2005), *aff'd*, 547 U.S. 677 (2006) .................26, 27

*Exxon Shipping Co. v. Baker*,
 554 U.S. 487 (2008).................................................32

*FDIC v. Abel*,
 1995 WL 716729 (S.D.N.Y. Dec. 6, 1995) ...........................26

*Frederique v. Cnty. of Nassau*,
 168 F. Supp. 3d 455 (E.D.N.Y. 2016) ..............................12

*Freedom Holdings, Inc. v. Spitzer*,
  357 F.3d 205 (2d Cir. 2004)............................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)......................................................................................25

*Georgia v. Tenn. Copper Co.*,
  206 U.S. 230 (1907)......................................................................................29

*Globaltex Grp. Ltd. v. Trends Sportswear Ltd.*,
  2010 WL 1633438 (E.D.N.Y. Apr. 21, 2010) .................................................12

*Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*,
  508 F. Supp. 2d 295 (D. Vt. 2007)..................................................................14

*Hamilton v. Baretta U.S.A. Corp.*,
  96 N.Y.2d 222 (2001) ...................................................................................10

*Harper v. Va. Dep't of Taxation*,
  509 U.S. 86 (1993)........................................................................................17

*Healy v. Beer Inst.*,
  491 U.S. 324 (1989)......................................................................................15

*Higazy v. Templeton*,
  505 F.3d 161 (2d Cir. 2007)...........................................................................35

*Illinois v. City of Milwaukee*,
  406 U.S. 91 (1972)...................................................................................29, 34

*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987)................................................................................16, 20

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
  500 U.S. 72 (1991)........................................................................................25

*Jackson v. Johns-Manville Sales Corp.*,
  750 F.2d 1314 (5th Circ. 1985).................................................................27, 28

*Juliana v. United States*,
  217 F. Supp. 3d 1224 (D. Or. 2016) ...............................................................24

*Kirschner v. KPMG LLP*,
  15 N.Y.3d 446 (N.Y. 2010) ...........................................................................12

*Korinsky v. Rose*,
  993 N.Y.S.2d 92 (N.Y. App. Div. 2014) ........................................................11

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991)............................................................................8

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  191 F.3d 229 (2d Cir. 1999)......................................................................34, 35

*Lehman Bros. Holdings v. United States*,
  2015 WL 2359256 (S.D.N.Y. May 8, 2015) ........................................................35

*Maine People's Alliance v. Mallinckrodt, Inc.*,
  471 F.3d 277 (1st Cir. 2006)........................................................................21

*Marsh v. Rosenbloom*,
  499 F.3d 165 (2d Cir. 2007)........................................................................30

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)............................................................................23, 25

*Masters v. Wilhelmina Model Agency*,
  2003 WL 145556 (S.D.N.Y. Jan. 17, 2003) ..........................................................8

*Merrick v. Diageo Ams. Supply, Inc.*,
  805 F.3d 685 (6th Cir. 2015) .......................................................................18

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013)................................................................... *passim*

*Michigan v. United States Army Corps of Eng'rs*,
  667 F.3d 765 (7th Cir. 2011) ...................................................................30, 32

*Missouri v. Illinois*,
  180 U.S. 208 (1901)................................................................................29

*Museum of Fine Arts v. Seger-Thomschitz*,
  623 F.3d 1 (1st Cir. 2010).........................................................................14

*In re Nassau Cty. Consol MTBE Prod. Liab. Litig.*,
  918 N.Y.S.2d 399 (N.Y. Sup. Ct. 2010) .............................................................10

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012) ..................................................................23, 29

*New Jersey v. City of New York*,
  283 U.S. 473 (1931)................................................................................29

*New York SMSA Ltd. P'ship v. Town of Clarkstown*,
  612 F.3d 97 (2d Cir. 2010).........................................................................18

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
   883 F.3d 45 (2d Cir. 2018).........................................................................16

*New York Trap Rock Corp. v. Clarkstown*,
   299 N.Y. 77 (1949) .............................................................................11, 35

*New York v. Shore Realty Corp.*,
   759 F.2d 1032 (2d Cir. 1985)......................................................................9

*North Dakota v. Minnesota*,
   263 U.S. 365 (1923).................................................................................34

*Nw. Envtl. Def. Ctr. v. Owens Corning Corp.*,
   434 F. Supp. 2d 957 (D. Or. 2006) ...........................................................25

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79 (1994)....................................................................................26

*Oneida Indian Nation v. New York*,
   691 F.2d 1070 (2d Cir. 1982).........................................................3, 22, 23

*In re Oswego Barge Corp.*,
   664 F.2d 327 (2d Cir. 1981).......................................................................32

*Pac. Capital Bank, N.A. v. Connecticut*,
   542 F.3d 341 (2d Cir. 2008).......................................................................26

*Parker Madison Partners v. Airbnb, Inc.*,
   283 F. Supp. 3d 174 (S.D.N.Y. 2017).........................................................24

*In re Paulsboro Derailment Cases*,
   2013 WL 5530046 (D.N.J. Oct. 4, 2013)....................................................10

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)...................................................................................22

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
   309 A.D.2d 91 (1st Dep't 2003) ...........................................................10, 11

*Rocky Mt. Farmers Union v. Corey*,
   730 F.3d 1070 (9th Cir. 2013) ...................................................................16

*S.-Cent. Timber Dev., Inc. v. Wunnicke*,
   467 U.S. 82 (1984).....................................................................................16

*Sahu v. Union Carbide Corp.*,
   2014 WL 3765556 (S.D.N.Y. July 30, 2014)............................................2, 10

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*,
    359 U.S. 236 (1959)...................................................................................................16

*Scribner v. Summers*,
    84 F.3d 554 (2d Cir. 1996).......................................................................................9

*Shay v. RWC Consulting Gp.*,
    2014 WL 3421068 (D.N.M. June 30, 2014) ..........................................................34

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...................................................................................................25

*SPGGC, LLC v. Blumenthal*,
    505 F.3d 183 (2d Cir. 2007).....................................................................................15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).................................................................................................17

*State v. Fermenta ASC Corp.*,
    238 A.D.2d 400 (2d Dep't 1997) ............................................................................10

*State v. Schenectady Chems., Inc.*,
    459 N.Y.S.2d 971 (N.Y. Sup. Ct. 1983), *aff'd as modified*, 479 N.Y.S.2d 1010
    (N.Y. App. Div. 1984) ......................................................................................10, 22

*Sunset Café, Inc. v. Mett's Surf & Sports Corp.*,
    959 N.Y.S.2d 700 (N.Y. App. Div. 2013...............................................................12

*TIA of N.Y, Inc. v I.J. Litwak Realty 1, LLC*,
    142 A.D.3d 606 (N.Y. App. Div. 2016) ..................................................................9

*United States v. Sec. Indus. Bank*,
    459 U.S. 70 (1982)...................................................................................................17

*United States v. Standard Oil Co.*,
    332 U.S. 301 (1947).................................................................................................28

*United States v. Texas*,
    507 U.S. 529 (1993)............................................................................................31, 32

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).................................................................................................22

*VIZIO, Inc. v. Klee*,
    2018 WL 1526626 (2d Cir. Mar. 29, 2018).......................................................15, 16

*Wash. Envtl. Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) .................................................................................25

*Williams v. Dow Chem. Co.*,
 2004 WL 1348932 (S.D.N.Y. June 16, 2004) .......................................................................10

*Wood v. Picillo*,
 443 A.2d 1244 (R.I. 1982) ....................................................................................................19

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
 164 F.3d 123 (2d Cir. 1999) ...........................................................................................26, 27

*Yang v. Cal. Dep't of Social Servs.*,
 183 F.3d 953 (9th Cir. 1999) ...................................................................................................8

### STATUTES

15 U.S.C. § 2901-note ...................................................................................................7, 13, 20

15 U.S.C. § 2931 ......................................................................................................................7

### OTHER AUTHORITIES

6 N.Y.C.R.R 242-1.1 ................................................................................................................6

9 N.Y.C.R.R. 8.2 ......................................................................................................................6

9 N.Y.C.R.R. 7.24(1) ...............................................................................................................6

N.Y. Envtl. Conserv. Law 23-0301 .........................................................................................6

*Restatement (Second) of Torts* § 821B .................................................................................30

*Restatement (Second) of Torts* § 829A .............................................................................19, 33

*Restatement (Second) of Torts* § 929A .................................................................................19

United Nations Framework Convention on Climate Change, 1771 U.N.T.S. 107
 (May 9, 1992) ........................................................................................................................19

William L. Prosser & W. Page Keeton, THE LAW OF TORTS § 52 (5th ed. 1984) ........................19

Plaintiff the City of New York (City) opposes the motion to dismiss the amended complaint (AC or complaint) by Chevron Corporation, ConocoPhillips, and Exxon Mobil Corporation (defendants).

## I.    INTRODUCTION

This lawsuit is based upon the fundamental principle that a corporation that makes a product causing severe harm when used exactly as intended should shoulder the costs of abating that harm.  Defendants knowingly and substantially contributed to climate change.  They are not exempt from tort law claims requiring them to internalize the environmental costs of their products instead of foisting them onto property owners, local governments, and the public.

Defendants are the five largest shareholder-owned producers of fossil fuels in the world.  These companies' production is responsible for over 11% of all the carbon dioxide and methane greenhouse gas pollution from industrial sources.  Most of defendants' fossil fuel production has occurred since 1980, by which time they knew that their products were contributing to the greenhouse effect and that potentially catastrophic global warming was substantially certain to result.  Decades ago, defendants were expressly warned by their own scientists and industry consultants that fossil fuels were causing a buildup of greenhouse gases in the atmosphere that threatened "catastrophic" future harms from climate change.  AC ¶¶ 82, 86-88.  Defendants' response was to double down on fossil fuel production and engage in communications efforts to make the consuming public believe that the scientific evidence of global warming was alarmist and wrong.  *Id.* ¶¶ 5-6, 76, 78-80, 94.

Defendants' conduct has substantially contributed to the harms that global warming is causing to New York City, including dangerously rising sea levels, more severe heat waves, and extreme weather events such as heavy downpours.  The City already has expended significant

sums on climate change adaptation and must do much more, including constructing seawalls and other expensive infrastructure critical to protecting the City and its residents.

The City brings claims of public nuisance, private nuisance, and trespass under New York law, which permits a manufacturer to be held liable for producing a lawful product when it knows that the product will be released into the environment with harmful consequences. *E.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 120-21 (2d Cir. 2013) (*MTBE*); *Sahu v. Union Carbide Corp.*, 2014 WL 3765556, at *8 (S.D.N.Y. July 30, 2014) (discussing *MTBE*: "Exxon knew" that gasoline containing MTBE would escape into the environment). The City seeks compensation for past and future costs.

Defendants incorrectly contend that this case conflicts with federal law, primarily the Clean Air Act (CAA). But the CAA does not regulate fossil fuel production and sales. And other statutes that defendants invoke do not directly address climate change beyond requiring research, study, and technology development.

Defendants' sweeping justiciability theory—that climate change tort litigation improperly intrudes on the federal legislative and executive branches—already has been rejected by the Second Circuit. *Connecticut v. Am. Elec. Power Corp.*, 582 F.3d 309, 321-49 (2d Cir. 2009), *aff'd in rel. part, rev'd on other grounds*, 564 U.S. 410 (2011) (*AEP*). The Second Circuit also rejected defendants' Article III standing and foreign policy preemption arguments. *Id*. at 339-49, 388. This Court should do the same. Indeed, defendants' overbroad foreign policy argument would invalidate a multitude of state laws on climate change.

Ultimately, defendants contend that, because they have contributed to an environmental problem global in scope, judicial relief is impossible. But the New York Court of Appeals has held that a "court performs its essential function when it decides the rights of parties before it,"

- 2 -

even when the ultimate solution to the problem "is likely to require massive public expenditure and to demand more than any local community can accomplish." *Boomer v. Atl. Cement Co.*, 26 N.Y.2d 219, 222-23 (1970).  Similarly, the Second Circuit has held there is "no principle of law that would relate the availability of judicial relief inversely to the gravity of the wrong sought to be redressed." *Oneida Indian Nation v. New York*, 691 F.2d 1070, 1083 (2d Cir. 1982).  These are the principles that control this case and require rejection of defendants' request for immunity from tort law.

## II.     FACTUAL BACKGROUND

### A.     Defendant fossil fuel producers have knowingly contributed to severe global warming injuries to New York City.

New York City faces an "existential threat" from climate change.  AC ¶¶ 2, 10.  The "temperature in the City is rapidly increasing, sea levels are rapidly rising, coastal storms are causing increased flooding, and extreme precipitation events are increasing throughout the Northeastern United States."  *Id.* ¶ 10.  Climate change is already causing the City to suffer increased hot days, flooding of low-lying areas, increased shoreline erosion, and higher threats of extreme weather events and catastrophic storm surge flooding.  *Id.*  The City is "particularly vulnerable to the effects of climate change" because it has 520 miles of coastline and is primarily situated on islands.  *Id.* ¶¶ 10, 64.  The "City's waterfront is among its greatest assets," but it is being harmed now by global warming-induced sea level rise and is under "dire threat" from continued warming.  *Id.* ¶ 64.  The City must build sea walls and other coastal armament, implement extensive public health programs, and take other resiliency measures to fully protect the public and City property.  *Id.* ¶¶ 11-12, 117-127.

Fossil fuels are the primary cause of global warming because, when used exactly as intended, they emit greenhouse gases, *i.e.*, carbon dioxide and methane.  *Id.* ¶¶ 1, 69-72.  Carbon

- 3 -

dioxide is by far the predominant greenhouse gas; when fossil fuels are burned they cause the atmospheric concentration of carbon dioxide to increase for hundreds of years.  *Id.*  Methane, or natural gas, is the second most important greenhouse gas, and inevitably escapes during production, transport from pipelines, and consumer use.  These gases are causing the planet to dangerously overheat, resulting in effectively permanent sea level rise.  *Id.* ¶ 68.

It is a myth that everyone is responsible for global warming.  There are just 100 large fossil fuel producers whose products have been responsible for 62% of all the greenhouse gas pollution from industrial sources going back over a hundred years, and for 71% of the emissions since 1988.  *Id.* ¶ 3.  Defendants are the five largest, investor-owned producers of fossil fuels in the world, as measured by the cumulative carbon and methane pollution generated from the use of their fossil fuels.  *Id.*  They are collectively responsible, through their production, marketing, and sale of fossil fuels, for over 11% of all the carbon and methane pollution from industrial sources.  *Id.*  And, as alleged in the AC, the "significant majority of emissions resulting from fossil fuels produced and marketed by Defendants occurred after defendants became aware of the consequences of climate change."  *Id.* ¶ 5.

Defendants are different from other contributors to climate change because of their: (1) massive levels of fossil fuel production over many years; (2) in-house scientific resources; (3) early knowledge of climate change impacts; (4) commercial promotions of fossil fuels as beneficial despite their knowledge to the contrary; (5) efforts to protect their fossil fuel market by downplaying and casting doubt on the risks of climate change; and (6) leadership roles in their trade association, the American Petroleum Institute (API), and other organizations that downplayed and cast doubt on global warming to the public and consumers.  *Id.* ¶ 7.

Defendants produced, marketed, and sold massive amounts of fossil fuels—primarily oil and natural gas—despite knowing that their combustion and use emits GHGs.  *Id.* ¶¶ 1, 80, 94. Defendants are parent corporations that "control all relevant decisions regarding fossil fuel production, fossil fuel reserves, fossil fuel promotion, and climate policy for their respective corporate families—indeed, these are some of the primary functions that defendants have performed for their subsidiaries."  *Id.* ¶ 21.  Defendants have known for decades that the GHG pollution from their products was building up in the atmosphere and would remain there for hundreds of years, that this process presented a threat of severe harm through the greenhouse effect, and that avoiding dangerous climate change required reducing the use of their fossil fuel products.  *Id.* ¶¶ 1, 4, 80-92.

The complaint sets forth in detail warnings by defendants' own scientists and industry consultants decades ago that the use of fossil fuels was causing GHGs to increase in the atmosphere and that the expected effects included potentially "catastrophic" harms.  *Id.* ¶¶ 80-92. Defendants disregarded these warnings, *id.* ¶¶ 5, 80, and instead continued to produce massive amounts of fossil fuels despite knowing that their fossil fuel products posed risks of "severe" and even "catastrophic" impacts on the global climate.  *Id.* ¶ 80.  Defendants sought to protect their market by discrediting the mainstream scientific consensus on global warming, downplaying the risks of climate change, and using large-scale, sophisticated advertising campaigns to portray fossil fuels as environmentally responsible.  *Id.* ¶¶ 6, 93-113.  Defendants' past and ongoing production and sales of fossil fuels "are harming New York City now."  *Id*. ¶¶ 2, 50-57.

The City has sued defendants as producers and sellers of fossil fuels and expressly disclaims any attempt to impose liability based on defendants' emissions of greenhouse gases. *Id*. ¶¶ 1, 14.  The City also "does not seek to restrain Defendants from engaging in their business

operations." *Id.* ¶ 14.  Contrary to defendants' representation, the City also does not seek to hold

defendants liable for "lobbying and other First Amendment-protected activities," Defendants'

Memo. Law (Br.) 6; the complaint makes no such allegations.  Nor does the City anywhere

allege that defendants' marketing activities "prevented effective regulation of emissions."  *Id.*

The City brings claims for public nuisance, private nuisance, and trespass under New

York law.  It seeks a money judgment for past, present, and future costs of climate change

adaptation measures the City must take to protect itself and its residents from climate change.

The City also requests an injunction requiring defendants to implement actions to prevent the

harms, but such an injunction would, as in *Boomer*, be ineffective "unless the defendant failed to

pay," 26 N.Y.2d at 228.  *See* AC at p. 74.

## B.    States and cities have significant interests in climate change.

Climate change is not a uniquely federal subject matter.  The City, many other

municipalities, and numerous states, including New York, have passed laws, regulations, and

policies—including state laws that directly regulate emissions—to combat global warming.[1]

The courts have rejected legal challenges to such state climate change laws under various federal

---

[1] *See, e.g.*, AC ¶ 56 (citing the City's Climate Action Executive Order, 118, 124); New York City Local Laws 84, 87, and 88 of 2009; New York City Local Law 66 of 2014; State of New York, Executive Order No. 24 (2009), 9 N.Y.C.R.R. 7.24(1); State of New York Executive Order No. 2 (2011), 9 N.Y.C.R.R. 8.2; State of New York Public Service Commission, Order Adopting a Clean Energy Standard, at 2-3 (Aug. 1, 2016), *available at* http://documents.dps.ny.gov/public/Common/ViewDoc.aspx?DocRefId=%7b44C5D5B8-14C3-4F32-8399-F5487D6D8FE8%7d; 2015 New York State Energy Plan overview, *available at* https://energyplan.ny.gov/-/media/nysenergyplan/2015-overview.pdf; 6 N.Y.C.R.R. 242-1.1; *Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 559 (S.D.N.Y. 2017) ("New York and many other States" have enacted laws to combat climate change), *appeal pending*, No. 17-2654 (2d Cir.).  The New York statute defendants cite, Br. 5, does not encourage the production of fossil fuels but, rather, merely imposes a policy to "prevent waste" by oil and gas producers.  N.Y. Envtl. Conserv. Law § 23-0301.

doctrines advanced by industry, including the Commerce Clause, preemption by U.S. foreign affairs power, and preemption by the Clean Air Act and other statutes.  *See* section IV.B.[2]

**C.  The Clean Air Act does not regulate fossil fuel production or sales; other federal statutes relating to climate change provide for research and study.**

The Clean Air Act (CAA) does not regulate the production or sales of fossil fuels, only emissions.  The Global Climate Protection Act of 1987 establishes a general U.S. policy to "limit mankind's adverse effect on the global climate by–(A) slowing the rate of increase of concentrations of greenhouse gases in the atmosphere in the near term; and (B) stabilizing or reducing atmospheric concentrations of greenhouse gases over the long term . . ."  P.L. 100-204, Title XI, §1103(a) (uncodified), *reprinted at* 15 U.S.C. § 2901-note.  Similarly, in the Global Change Research Act of 1990, Congress recognized that "human-induced changes, in conjunction with natural fluctuations, may lead to significant global warming and thus alter world climate patterns and increase global sea levels" with adverse effects on "coastal habitability" and "human health."  15 U.S.C. § 2931(a)(2).  These and other federal laws relating to climate change cited by defendants, Br. 3-5, merely require research, study, and technology development, as the Second Circuit found in a detailed analysis.  *See AEP*, 582 F.3d at 381-85.

The United States is party to a treaty that requires developed nations to "adopt national policies and take corresponding measures on the mitigation of climate change, by limiting its anthropogenic emissions of greenhouse gases."  United Nations Framework Convention on Climate Change (UNFCCC), 1771 U.N.T.S. 107 (May 9, 1992), at art. 4(2)(a).  But the UNFCCC does not impose binding emissions limits.  Instead, it establishes the general "aim of

---

[2] Defendants incorrectly contend that this tort case is "about preventing global warming impacts 'both locally and globally,'" Br. 3 (quoting AC ¶ 56), but they are misquoting this portion of the complaint, which is discussing an executive order demonstrating the City's efforts outside of this case to do its part on climate change.

returning individually or jointly to their 1990 levels these anthropogenic emissions of carbon

dioxide and other greenhouse gases." *Id*. at art. 4(2)(b).[3]

### III.   STANDARD OF REVIEW

To "survive a motion to dismiss, a complaint need only provide 'sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.'" *Citizens United v.

Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

(2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  Claims are plausible if they "'raise a reasonable expectation that

discovery will reveal evidence'" of the wrongdoing alleged.  *Citizens United*, 882 F.3d at 380

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court "accept[s] as true all

factual allegations in the complaint and draw[s] all reasonable inferences in favor of the non-

moving party."  *City of Providence, Rhode Island v. Bats Global Mkts., Inc.*, 878 F.3d 36, 48 (2d

Cir. 2017).  The Court may not consider items outside the complaint.  *Kramer v. Time Warner,

Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Masters v. Wilhelmina Model Agency*, 2003 WL 145556,

at *5 (S.D.N.Y. Jan. 17, 2003) (refusing to consider news articles cited by defendant).

### IV.   ARGUMENT

**A.   The City's claims are viable under New York law.**

**1.   The City has stated proper nuisance and trespass claims.**

The City has stated proper claims of public nuisance, private nuisance, and trespass under

New York law.  A public nuisance "consists of conduct or omissions which offend, interfere

with or cause damage to the public in the exercise of rights common to all in a manner such as to

---

[3] Defendants cite a Senate Resolution, Br. 4-5, but congressional "resolutions do not have the force of law." *Yang v. Cal. Dep't of Social Servs.*, 183 F.3d 953, 958 n.3 (9th Cir. 1999).

. . . interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 568 (1977). A private nuisance is an "interference with the use or enjoyment of land." *Id*. A trespass is an interference with the right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner. *MTBE*, 725 F.3d at 119-22. The City has properly pled facts in support of the elements of each. AC ¶¶ 1, 4-5, 132-53.[4]

"The deepest doctrinal roots of modern environmental law are found in principles of nuisance." *Cox v. City of Dallas*, 256 F.3d 281, 291 (5th Cir. 2001). Nuisance retains its vitality notwithstanding the existence of environmental statutes. *See, e.g.*, *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1049-53 (2d Cir. 1985) (state entitled to injunctive relief under public nuisance law but not CERCLA). Similarly, trespass claims often provide relief for environmental harms. *See, e.g.*, *MTBE*, 725 F.3d 65; *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) (finding trespass where barium particles migrated onto plaintiff's property); *Berenger v. 261 W. LLC*, 940 N.Y.S.2d 4, 10 (N.Y. App. Div. 2012) (glycol leak can constitute trespass); *TIA of N.Y, Inc. v I.J. Litwak Realty 1, LLC*, 142 A.D.3d 606, 606-07 (N.Y. App. Div. 2016) (denying summary judgment on trespass claim where defendant caused plaintiff's property to flood).

Defendants vaguely argue that the City's claims "have no basis" in New York law. Br. 26. But New York law specifically recognizes claims of public nuisance, private nuisance, and trespass against a manufacturer that has sold a "lawful, regulated" product, Br. 27, particularly

---

[4] The City alleges an intentional nuisance, *see Copart*, 41 N.Y.2d at 569-70. Defendants do not contest intent.

where it knew that its product would be released into the environment with harmful

consequences.[5]  This is precisely what the City alleges here.  AC ¶¶ 80-92.

The cases defendants cite are readily distinguished.  In *City of New York v. A.E. Sales*

*LLC*, 2005 WL 3782442, at \*2-3 (S.D.N.Y. Feb. 9, 2005), the claim failed because an

insufficient number of people were affected by the alleged nuisance—which can hardly be said

of the City's case here.  *A.E. Sales*, moreover, embraced environmental harm as a proper use of

public nuisance, which it distinguished from using nuisance law "to close a tax loophole."  *Id.* at

\*3; *see also City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 349-50

(E.D.N.Y. 2008) (upholding public nuisance claim nearly identical to one in *A.E. Sales*).

Defendants also cite *In re Paulsboro Derailment Cases*, 2013 WL 5530046 (D.N.J. Oct. 4,

2013), but that case was decided under New Jersey law, *id.* at \*1, and its statement that "modern

courts do not favor trespass claims for environmental pollution", *id.* at \*8, contradicts New York

law as set forth in the Second Circuit's decision in *MTBE*.[6]

Nor do defendants' two cases against gun manufacturers support dismissal here.

*Hamilton v. Beretta U.S.A. Corp.* alleged negligence rather than nuisance or trespass, and was

decided after a full trial on the merits.  96 N.Y.2d 222, 235, 238-39 (2001).  And *People ex rel.*

---

[5] *See MTBE*, 725 F.3d at 121 (upholding verdict where Exxon "knew that MTBE gasoline it manufactured would make its way into Queens, where it was likely to be spilled, and once spilled, would likely infiltrate the property of others."); *id.* at 119-120 (similar, trespass); *Sahu*, 2014 WL 3765556, at \*7-8 (discussing *MTBE*: "Exxon knew" that gasoline would be stored in leaky tanks and would escape into the environment); *Williams v. Dow Chem. Co.*, 2004 WL 1348932, at \*19-21 (S.D.N.Y. June 16, 2004) (denying summary judgment in public nuisance claim against pesticide manufacturer); *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 280-81 (E.D.N.Y. 2004); *State v. Schenectady Chems., Inc.*, 459 N.Y.S.2d 971, 977 (N.Y. Sup. Ct. 1983) (public nuisance applies to a "party who, either through manufacture or use, has sought to profit from marketing a . . . product" that causes environmental harm) (emphasis added), *aff'd as modified*, 479 N.Y.S.2d 1010 (N.Y. App. Div. 1984); *State v. Fermenta ASC Corp.*, 656 N.Y.S.2d 342, 346 (N.Y. App. Div. 1997) (upholding trespass verdict by county water authority against chemical manufacturer).

[6] *In re Nassau County Consolidated MTBE Products Liability Litigation*, 918 N.Y.S.2d 399 (N.Y. Sup. Ct. 2010), to the extent it rejects manufacturer liability even when the defendant had knowledge of the harm, also misstates the law of trespass.  *See MTBE*, 725 F.3d at 119-20.

- 10 -

*Spitzer v. Sturm, Ruger & Co*. was dismissed because it sought to recycle the same factual theory rejected at trial in *Hamilton* (*i.e.*, that manufacturers could trace illegal gun purchases through a federal database) and because "unlawful and frequently violent acts of criminals" broke the causal chain.  309 A.D.2d 91, 99-101 (1st Dep't 2003).  Here, no factual record defeats the City's allegations.  *See New York Trap Rock Corp. v. Clarkstown*, 299 N.Y. 77, 81 (1949) (whether "conduct constitutes a public nuisance must be determined as a question of fact under all the circumstances").  Nor is there intervening criminal conduct.  Rather, consumers' combustion of fossil fuels is not only foreseeable—it is their very intended use.

> **2.      The City has properly alleged proximate cause.**

Defendants' proximate cause argument is essentially an abbreviated version of the proximate cause argument advanced in ConocoPhillips' separate brief, and should be rejected for the reasons set forth in the City's separate opposition to the ConocoPhillips brief.  The City incorporates those arguments here.

> **3.      The City expressly pled lack of justification or permission.**

Contrary to defendants' argument, the City has not "consented" to the trespass.  Br. 29. Instead, the City expressly alleges that it has "*not* granted permission" to defendants to engage in their conduct while knowing it would lead to climate change injuries.  AC ¶ 148 (emphasis added).  And the City alleges that this unauthorized conduct resulted in the "invasion of property owned by the City, *without permission or right of entry*, by way of increased heat, sea level rise, storm surge flooding, and flooding from increased intensity and frequency of precipitation."  *Id.* ¶ 149 (emphasis added).[7]  The City has also alleged that these invasions "were otherwise

---

[7] Defendants' cases are inapposite.  *See* Br. 29-30, *citing Boring v. Town of Babylon*, 47 N.Y.S.3d 419, 420-21 (N.Y. App. Div. 2017) (entry onto plaintiffs' property was with consent and/or pursuant to valid search warrant); *Korinsky v. Rose*, 993 N.Y.S.2d 92, 96 (N.Y. App. Div. 2014) (alleged trespasser was a city marshal who entered

unjustified," *id.*, and defendants do not suggest that any legal authorization or other valid

justification was present.[8]  The City has properly stated its trespass claim.

    **4.**      **The City's claims are not barred by the *in pari delicto* doctrine.**

Contrary to defendants' argument, the City was not "an active, voluntary participant in

the unlawful activity."  Br. 30.  Here, the conduct underlying the City's claims consists of

defendants' production, marketing, and sale of massive quantities of fossil fuels.  AC ¶¶ 94-107.[9]

Even accepting that the City used fossil fuels, there are no allegations in the complaint to support

a finding that the City contributed equally to its injuries.  *See Globaltex Grp. Ltd. v. Trends*

*Sportswear Ltd.*, 2010 WL 1633438, at *4 (E.D.N.Y. Apr. 21, 2010) ("If the defendant's conduct

is the more egregious, plaintiff's claim is not barred."); *Kirschner v. KPMG LLP*, 15 N.Y.3d 446,

464 (N.Y. 2010) (doctrine applies "where both parties are equally culpable").  *In pari delicto* is

no bar.

**B.**    **The City's claims are not barred by any federal doctrine.**

    **1.**      **The City's claims are not preempted by U.S. foreign policy.**

Defendants' foreign policy preemption defense must establish a "clear conflict" between

U.S. foreign policy and the City's claims.  *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421

(2003).  The Second Circuit in *AEP* already has rejected the argument that U.S. foreign policy on

climate change displaces a federal public nuisance claim.  582 F.3d at 388; *see also id.* at 330-32.

Here, defendants cannot make the even more difficult showing of a clear conflict with state law.

---

plaintiff's property pursuant to a valid court order); *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 490 (E.D.N.Y. 2016) (trespass claims against police officer dismissed due to official immunity).

   [8] *Compare Sunset Café, Inc. v. Mett's Surf & Sports Corp.*, 959 N.Y.S.2d 700, 702 (N.Y. App. Div. 2013) (entry was justified because under color of a duly executed lease); *22 Irving Place Corp. v. 30 Irving LLC*, 57 Misc. 3d 253, 256 (N.Y. Sup. Ct. 2017) (entry was justified because required by law).

   [9] Defendants allege that the City "authorized the activities it now claims created the nuisance, encouraged its residents to use fossil fuels, and reaped economic benefits from this reliance, including as an investor in fossil fuel companies" but fail to cite to the complaint.  Br. 31.

First, the City's tort case does not conflict with U.S. foreign policy.  Defendants rely on: (1) the Trump Administration's announcement of an intention to withdraw from the Paris Agreement, which set out particular emissions targets for the United States and other countries, Br. 5; (2) continued U.S. participation in other (unspecified) obligations under the UNFCCC, *id.* at 3; and (3) a 1987 statute that directs the State Department to speak for the federal government on "those aspects of United States policy requiring action through the channels of multilateral diplomacy."  Pub. L. No. 100–204, § 1103(c), 101 Stat. 1331, 15 U.S.C. § 2901 note.  Nothing in these policies suggests that domestic law of *any* kind would contradict U.S. foreign policy.  *See AEP*, 582 F.3d at 330-32.  The City's lawsuit is plainly not a "United States policy requiring action through the channels of multilateral diplomacy."  And the State Department communication on withdrawal from the Paris Agreement confirms that "[w]e will continue to reduce our greenhouse gas emissions," and that "all future policy options remain open to the administration," including "re-engaging" in the Paris Agreement.[10]  Indeed, the announced intent to withdraw from the Paris accord in the future is not a policy against all domestic laws to reduce emissions—otherwise all state-level laws requiring GHG emission reductions would be invalid. *See supra* section II.B.  *A fortiori*, it is not a policy against a tort case, especially one that does not seek to enjoin defendants' business operations.  AC ¶ 14.[11]

Second, the City is aware of only two cases where defendants (unsuccessfully) raised foreign policy preemption as a defense in global warming litigation.  In both, the courts rejected the argument that state laws regulating GHG emissions conflicted with U.S. foreign policy.

---

[10] U.S. Dep't of State, Communication Regarding Intent To Withdraw From Paris Agreement (Aug. 4, 2017), available at https://www.state.gov/r/pa/prs/ps/2017/08/273050.htm.  Specifically, the United States has stated its intention to withdraw from Paris in 2020, the earliest date allowed under the agreement.

[11] Defendants' request that the Court consider a news item reporting on an interview with the Mayor, Br. 18 n.13, is wholly improper.  *See supra* section III.  Moreover, defendants have taken the statement attributed to the Mayor out of context: it related to the City's financial divestiture from fossil fuels, not to this litigation.

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1183-88 (E.D. Cal. 2007);

*Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 396 (D. Vt. 2007).

Third, defendants' cases are distinguishable because they involved actual conflicts with

state law.  In *Garamendi*, the U.S. agreement to *voluntary* procedures for disclosure of certain

insurance liabilities preempted a California law requiring *mandatory* disclosure of the same

liabilities—*i.e.*, an actual conflict with a concrete U.S. commitment.  *See* 539 U.S. at 421; *see*

*also In re Assicurazioni Generali, S.p.A.*, 592 F.3d 113, 117-18 (2d Cir. 2010) (applying

*Garamendi*); *Museum of Fine Arts v. Seger-Thomschitz*, 623 F.3d 1, 13-14 (1st Cir. 2010) (same,

rejecting defense where federal foreign policy "is too general and too hedged to be used as

evidence of an express federal policy disfavoring" state law).  In *Crosby v. National Foreign*

*Trade Council*, 530 U.S. 363 (2000), the Court found a conflict between a state law sanctioning

companies that did business with Burma and a federal statute vesting exclusive authority in the

president to impose similar sanctions.  But defendants cite no statute giving the president

exclusive authority over all activities causing climate change and the Second Circuit has rejected

the very "bargaining leverage" argument defendants make here.  *See AEP*, 582 F.3d at 388; Br.

18.  Climate change (unlike the Burma sanctions) is an area of concurrent state jurisdiction.  *See*

*infra* section IV.D.1.  Countless state and local laws go much farther than a tort case by directly

limiting emissions and even regulating the carbon content of fossil fuels.  *See supra* section II.B.

These laws would all be rendered invalid under defendants' overbroad theory.

### 2.     The City's lawsuit is not an impermissible control on extraterritorial commerce.

Defendants wrongly contend that the City seeks to "regulate out-of-state commercial

activities."  Br. 19.  This case seeks reimbursement for costs that the City has incurred, and will

incur in the future, to combat the effects of climate changes in New York City caused by

- 14 -

defendants.  The only injunctive relief sought here is a *Boomer* injunction, *i.e.*, one that is "not to be effective unless the defendant failed to pay."  26 N.Y.2d at 228.  And even that injunction would require defendants to abate the nuisance and trespass only by constructing seawalls and other local infrastructure.  As alleged in the complaint, it is too late to stop climate change or rising sea levels, AC ¶ 68, and the City expressly disclaims any remedy that would "restrain Defendants from engaging in their business operations."  AC ¶ 14.[12]  So this case is first and foremost about compensatory relief.

And, importantly, a damages award does not have "the practical effect of *requiring* out-of-state commerce to be conducted at the regulating state's direction."  *VIZIO, Inc. v. Klee*, 2018 WL 1526626, at *4 (2d Cir. Mar. 29, 2018) (emphasis in original).  In *VIZIO*, the Second Circuit rejected a dormant Commerce Clause challenge to a law that imposed the cost of a recycling program on electronics manufacturers according to their national market share.  The plaintiff contended that the law would "inevitably affect its television prices outside Connecticut."  *Id.* at *5.  But the court held that "Connecticut's E–Waste Law does nothing to *control* interstate commerce, but rather merely *considers* out-of-state activity in imposing in-state charges."  *Id.* at *4 (emphases in original).

The Second Circuit explained that the "practical effect amounts to no more than 'upstream pricing impact'" and, as such, the e-waste law "is merely one of 'innumerable valid state laws affecting pricing decisions in other States.'"  *Id.* at *5.  The court thus concluded that such a law, unlike *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989), does not "directly control[] commerce occurring wholly outside the boundaries of a State."  *Id.* at *6.[13]  Likewise

---

[12] *BMW of North America, Inc. v. Gore* is thus inapposite, because there the punitive damages were aimed at changing conduct in other states that had "no impact on Alabama or its residents."  517 U.S. 559, 572-73 (1996).

[13] *Accord SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 194 (2d Cir. 2007) (rejecting argument that gift card law "operates as an extraterritorial restriction because it forces the costs of compliance onto out-of-state consumers"

here, the City's lawsuit does not seek to control defendants' conduct outside the state—much less outside the country—but simply to have it considered in awarding compensation for local harm (or, in the event of nonpayment on a *Boomer* injunction, to take purely *local* action to abate local harms).[14]

The Second Circuit also recently held that the dormant commerce clause inquiry "must be directed to determining whether the challenged statute is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45, 64 (2d Cir. 2018). Where that "legitimate local concerns" standard is met, "[a]ny extraterritorial impact is incidental to this purpose and thus is of no judicial significance." *Id.* at 66; *see also VIZIO*, 2018 WL 1526626, at *4 (describing the extra-territoriality doctrine as "'the most dormant doctrine in dormant commerce clause jurisprudence'") (quoting *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1174 (10th Cir. 2015) (Gorsuch, J.) (distinguishing *Healy* in upholding a state law directly aimed at the reduction of greenhouse gas emissions)). There is no question that this lawsuit seeks to protect the City's property and residents.

---

where costs could be "absorbed" by merchant "in the form of lower profits"); *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 221 (2d Cir. 2004) ("While the out-of-state wholesale prices of cigarettes may be affected by the Contraband Statutes," the cigarette importers "remain free to conduct commerce on their own terms, without either scrutiny or control by New York State."); *Rocky Mt. Farmers Union v. Corey*, 730 F.3d 1070, 1101-03 (9th Cir. 2013) (upholding state climate change law regulating carbon content of fossil fuels sold in interstate commerce); *see also Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 108 (2d Cir. 2017) (upholding Connecticut renewable energy statute against Commerce Clause challenge).

[14] Defendants' cases are inapposite. *See* Br. 19-20, *citing Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298 (1994) (approving state tax scheme that required "worldwide combined reporting" in order to account for (and tax) revenues earned abroad by multinational companies); *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82 (1984) (disapproving Alaska law conditioning the sale of state-owned timber on a requirement that the timber be processed in state prior to export). Defendants also cite *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959), and *International Paper Co. v. Ouellette*, 479 U.S. 481, 495 (1987), *see* Br. 21, but these cases involved preemption, not the Commerce Clause.

- 16 -

3.      **The City's claims do not violate the due process or takings clauses.**

The City's claims do not implicate due process or the takings clause simply because they could subject defendants to substantial monetary liability for past conduct.  Defendants' cases address criminal penalties, punitive damages, and statutes creating retroactive liability, none of which are relevant here.

For example, *Bordenkircher v. Hayes*, a criminal case in which the Supreme Court found *no* due process violation, says only that due process proscribes punishing a person for conduct that "the law plainly allows him to do."  434 U.S. 357, 363 (1978).  But this is not a criminal case and thus defendants will not be punished.

In the same vein, the punitive damages cases cited by defendants, *State Farm Mut. Auto. Ins. Co. v. Campbell* and *BMW,* also do not advance defendants' cause.  Here the City does not seek punitive damages but rather compensatory damages, which by design are "not to punish the wrongdoer."  *MTBE*, 725 F.3d at 126.  Moreover, both *State Farm* and *BMW* expressly approved of state tort judgments aimed at remedying local injuries.  *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419-420 (2003); *BMW*, 517 U.S. at 572-73 (state may impose tort liability for conduct occurring both in-state and out-of-state where conduct has impact on state and its citizens).

Finally, *Eastern Enterprises v. Apfel* involved retroactive *legislative* liability extending to parties "that could not have anticipated the liability."  524 U.S. 498, 528-29 (1998).  But here, the issue is judicial relief, not legislation, and thus defendants' argument is foreclosed.[15]   The

---

[15] *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student.").

- 17 -

torts of nuisance and trespass are some of the oldest claims in our system of law.  Here, moreover, the City's complaint alleges detailed facts that defendants knew of the global warming harm from their products decades ago, and even considered an "energy source changeover" to avoid it, *e.g.*, AC ¶¶ 4, 7, 80-92, and thus could have anticipated being held liable.

### 4.   The City's claims are not preempted by federal statutes.

The City's claims are not preempted by any federal statute.  Courts start with the assumption that claims within "the historic police powers of the States"—including nuisance and trespass claims—are not preempted "unless that was the clear and manifest purpose of Congress."  *MTBE*, 725 F.3d at 96 (quotation marks omitted).  There is no "clear and manifest" purpose in the CAA or any other statute to preempt the City's claims.

***No field preemption.***  Defendants' first preemption argument, made in a single sentence, is based on field preemption, which exists only "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law."  *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010). *AEP* is the only case defendants cite on field preemption, but *AEP* addressed displacement of federal common law, not preemption of state law; the latter doctrine sets a higher bar for defendants.[16]  *AEP* also involved a different "field" altogether, because it was a case against emitters rather than product sellers, which are not regulated by the CAA.  The City is not aware of any case in which a court has embraced field preemption of state law under the CAA.[17]

---

[16] *AEP*, 564 U.S. at 423 ("Legislative displacement of federal common law does not require the same sort of evidence of a clear and manifest congressional purpose demanded for preemption of state law.") (quotation marks and brackets omitted); *Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 693 (6th Cir. 2015) ("There are fundamental differences, however, between displacement of federal common law by the [Clean Air] Act and preemption of state common law by the Act.").

[17] *See Ass'n of Taxicab Operators, USA v. City of Dallas*, 866 F. Supp. 2d 595, 603 (N.D. Tex. 2012) (rejecting contention that CAA occupied field), *aff'd*, 720 F.3d 534 (5th Cir. 2013).

***No obstacle preemption.***  The City's claims also are not barred by "obstacle" preemption under the CAA.  In order to establish obstacle preemption, defendants must identify a "sharp" and "actual conflict" between New York law and "the overriding federal purpose and objective" of the CAA.  *MTBE*, 725 F.3d at 101.  This is a "heavy burden," and to carry it defendants must find a "repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together"; mere "tension" is not enough.  *Id.* at 102 (quotation marks omitted).

Defendants' only argument—that any judgment for the City would require a finding that defendants' conduct "has led to an 'unreasonable' level of emissions" and that such a finding would supposedly conflict with EPA's authority to issue emissions limits under the CAA, *see* Br. 24-25—misinterprets both tort law and the CAA.  Liability in nuisance does not depend upon the unreasonableness of defendants' conduct.[18]  For example, in *Boomer v. Atlantic Cement Co.*, the court concluded that it lacked the expertise to determine if air pollution from a cement plant could or should be reduced, and that enjoining the plant's operation was out of the question because of its size and social value as a large employer.  26 N.Y.2d at 223, 225-26.  But the court still held that the cost of pollution should be borne by the plant and not by those it had injured, and awarded the neighbors permanent damages.  *Id.* at 226.  Similarly, the Restatement requires proof that the interference with public rights is "unreasonable," but provides (in a section based partly on *Boomer*) that unreasonableness in a damages case can be shown by proving "severe" harm, without any inquiry into the reasonableness of the tortfeasor's conduct.  RESTATEMENT (SECOND) OF TORTS § 829A (Restatement).  Thus, under nuisance law, the merits issue here is whether defendants' intentional conduct has caused an unreasonable interference with public

---

[18] *See* William L. Prosser & W. Page Keeton, THE LAW OF TORTS § 52 (5th ed. 1984) (the "interference . . . can be unreasonable even when the defendant's conduct is reasonable."); *Wood v. Picillo*, 443 A.2d 1244, 1247 (R.I. 1982) ("liability in nuisance is predicated upon unreasonable injury rather than upon unreasonable conduct").

- 19 -

health and/or the use and enjoyment of property—not whether this conduct has been reasonable.
The City's trespass claim is also agnostic on the "reasonability" of anyone's conduct or emission
levels; it only requires proving that defendants' intentional conduct has caused a trespass (*e.g.*,
by seawater) on the City's land.  *See MTBE*, 725 F.3d at 119.  In short, the City's claims involve
traditional tort questions of causation and compensation, without threatening EPA's expertise or
its CAA authority to limit emissions.

Second, even if, *arguendo*, the unreasonableness of defendants' conduct *were* at issue,
imposing liability would not commit the Court to a conflict with the CAA, much less one that is
"direct and positive," "sharp," and "actual."  *Id.* at 101.  The activities at issue in this lawsuit
involve the production, sale, and marketing of fossil fuels—activities that are not regulated by
the CAA.  Rather, the CAA regulates emissions.  *Int'l Paper*, 479 U.S. 481.[19]  So there is no
chance here of defendants being subject to conflicting obligations.

**No preemption by other statutes.**  Finally, the City's claims are not preempted by other
statutes.  Statutes seeking to shift fossil fuel production from foreign sources to domestic
sources, *see* Br. 25, do not amount to a federal law mandating high production globally.  They
also do not conflict with a lawsuit for damages that would not limit production anywhere.  Nor
do they contradict U.S. climate change policy to "limit mankind's adverse effect on the global
climate."  P.L. 100-204, Title XI, §1103(a) (uncodified), *reprinted at* 15 U.S.C. § 2901-note.
Defendants also rely on a grab-bag of statutes and legislative reports vaguely proclaiming
Congress' view that energy production and environmental concerns should be balanced.  Br. 25-
26.  But none of this miscellany proscribes or requires any conduct that would conflict with

---

[19] Thus, defendants' reliance on *North Carolina ex rel. Cooper v. TVA*, 615 F.3d 291, 305 (4th Cir. 2010), Br.
24, where the plaintiff sought to enjoin emissions from polluters regulated under the CAA, is irrelevant.

compensating the City for its global warming injuries.  And generalities cannot generate a "repugnance or conflict [that] is so direct and positive that the two acts cannot be reconciled or consistently stand together."  *MTBE*, 725 F.3d at 101.[20]  There is no preemption.

**C.    The City's claims are justiciable and it has standing.**

**1.    The City's claims present a justiciable case or controversy.**

Defendants' argument that the City's nuisance and trespass claims are nonjusticiable because they have "no analogue to claims at common law," *see* Br. 31-32, is incorrect.  Nuisance doctrine has existed since the twelfth century, *Copart Indus.*, 41 N.Y.2d at 567, and has been applied broadly to environmental concerns.  *Cox*, 256 F.3d at 291 ("Nuisance actions have challenged virtually every major industrial and municipal activity which is today the subject of comprehensive environmental regulation. . . . Nuisance theory and case law is the common law backbone of modern environmental and energy law.") (quotation marks omitted).

Moreover, the Second Circuit has expressly held a global warming public nuisance claim to be justiciable.  *AEP*, 582 F.3d at 325 ("In this common law nuisance case, '[t]he department to whom this issue has been 'constitutionally committed' is none other than our own—the Judiciary.'") (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2d Cir. 1991)).  The Supreme Court affirmed this ruling.  *AEP*, 564 U.S. at 420 & n.6; *see also Maine People's Alliance v. Mallinckrodt, Inc.*, 471 F.3d 277, 286 (1st Cir. 2006) (the "tasks involved in adjudicating environmental cases are well within the federal courts' accustomed domain"

---

[20] Defendants invoke the Energy Policy Act of 2005 and the Energy Independence and Security Act of 2007, Br. 3, 26, but neither statute establishes any policy in conflict with a tort case or with state law.  *See AEP*, 582 F.3d at 383-84; *Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*, 134 F. Supp. 3d 1270, 1288-89 (D. Or. 2015), *appeal pending*, No. 15-35834 (9th Cir.).

because "nuisance principles contribute heavily to the doctrinal template" for environmental statutes). By contrast, none of the cases relied upon by defendants involved tort claims at all.[21]

Public nuisance applies to anything that constitutes an unreasonable interference with rights common to the general public and, as the Supreme Court observed in *AEP*, "public nuisance law, like common law generally, adapts to changing scientific and factual circumstances." 564 U.S. at 423. New York courts agree. *State v. Schenectady Chems., Inc.*, 459 N.Y.S.2d 971, 977 (N.Y. Sup. Ct. 1983) ("The common law is not static."), *aff'd as modified*, 479 N.Y.S.2d 1010 (N.Y. App. Div. 1984).[22]

The New York Court of Appeals also has rejected defendants' argument that a nuisance claim cannot be judicially resolved where the issue involves a widespread environmental problem like air pollution, which "is likely to require massive public expenditure and to depend on regional and interstate controls." *Boomer*, 26 N.Y.2d at 223. As the Court there stated, a "court performs its essential function when it decides the rights of parties before it," even though its "decision of private controversies may sometimes greatly affect public issues." *Id*. at 222.

The Second Circuit has similarly rejected an argument that "the scale of the wrong alleged and the size of the remedy sought" may render claims nonjusticiable. *Oneida Indian Nation v. New York*, 691 F.2d at 1083. The court acknowledged that "a declaratory judgment declaring the New York treaties with a Native American tribe to be invalid could cause substantial dislocations in the affected lands casting a cloud over all current title holders, and that the impact of a monetary award could be heavy." *Id*. "*Yet we know of no principle of law*," the

---

[21] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006) (taxpayer standing in Commerce Clause case); *Diamond v. Chakrabarty*, 447 U.S. 303, 307 (1980) (statutory interpretation of patent statute); *Pegram v. Herdrich*, 530 U.S. 211, 214 (2000) (statutory interpretation of ERISA); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 401 (2004) (Sherman Act).

[22] The Appellate division's only modification of the trial court decision in *Schenectady* was to reinstate a claim for restitution that the trial court had dismissed. *See* 479 N.Y.S.2d at 1014.

court declared, "*that would relate the availability of judicial relief inversely to the gravity of the wrong sought to be redressed*." *Id*. (emphasis added).  The court thus held the claims to be justiciable "notwithstanding the complexity of the issues involved and the magnitude of the relief requested." *Id*.  Defendants' arguments should likewise be rejected.

### 2.    The City's claims do not present political questions.

Defendants' political question argument is foreclosed.  In *AEP*, the Second Circuit reviewed this issue in detail and rejected it, and the Supreme Court affirmed.  582 F.3d at 321-32, *aff'd in rel. part, rev'd on other grounds*, 564 U.S. at 420 & n.6.[23]  The Ninth Circuit in *Kivalina* did not bother to address the issue even though it was fully briefed and the doctrine is jurisdictional in the Ninth Circuit.  *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 854-58 (9th Cir. 2012) (describing district court's political question ruling but ignoring the issue even though it was fully briefed on appeal, and proceeding to the merits); *Corrie v. Caterpillar*, 503 F.3d 974, 977 (9th Cir. 2007) (political question doctrine is jurisdictional in Ninth Circuit).  A Fifth Circuit panel opinion that is persuasive authority also rejected the argument.  *Comer v. Murphy Oil USA*, 585 F.3d 855, 869-79 (5th Cir. 2009), *vacated*, 598 F.3d 208 (5th Cir. 2010) (*en banc*), *appeal dismissed*, 607 F.3d 1049 (5th Cir. 2010) (*en banc*).

### 3.    The City has standing.

The City has standing because it has alleged climate change injuries that are fairly traceable to defendants' conduct and that are redressable.  *See Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (state had standing to sue for climate injuries); *Kivalina*, 696 F.3d at 854-55

---

[23] While the Court was split 4-4 on standing, it is not apparent from the decision that the political question argument received even a single vote.  *See id.* (stating only that four Justices would find there was no standing).  Defendants try to distinguish *AEP* by contending the case dealt with only six coal-fired power plants, Br. 34, but in fact the complaint in that case encompassed six *defendants* that owned over a hundred plants spread across twenty states that were responsible for a quarter of all U.S. electric power sector emissions annually.  *AEP*, 582 F.3d at 314.

(implicitly rejecting standing argument and reversing lower court standing ruling by proceeding to the merits); *AEP*, 582 F.3d at 349 (state, municipal, and private plaintiffs, including City of New York, had standing to sue for climate injuries), *aff'd in rel. part by equally divided court, rev'd on other grounds,* 564 U.S. 410, 420 (2011); *Juliana v. United States*, 217 F. Supp. 3d 1224, 1248 (D. Or. 2016).  The City alleges current, specific harms, including that the "temperature in the City is rapidly increasing, sea levels are rapidly rising, [and] coastal storms are causing increased flooding."  AC ¶ 10; *see also id.* ¶¶ 2, 50-51, 57, 117-27, 129-31, 133-34, 140, 142-44, 149-52.  These are sufficiently specific allegations of injury-in-fact.  *AEP*, 582 F.3d at 341-42; *Baur v. Veneman*, 352 F.3d 625, 635 (2d Cir. 2003) (widely shared harm does not defeat injury in fact where the "harm is sufficiently concrete and particularized").  And they stand in stark contrast to the allegations in defendants' cited cases.[24]

The City also sufficiently alleges that its injuries are fairly traceable to defendants' conduct.  The City alleges that defendants "are collectively responsible . . . for over 11% of all the carbon and methane pollution from industrial sources that has accumulated in the atmosphere," AC ¶ 3, and that this pollution from the intended use of defendants' products is the primary cause of climate change and its corresponding impacts, including sea level rise and flooding.  *Id.* ¶¶ 52-55.  These are sufficient causal allegations.  *AEP*, 582 F.3d at 345-47 (global warming injuries fairly traceable to conduct of defendants responsible for "2.5% of man-made carbon dioxide emissions").

---

[24] *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs' harm "not certainly impending"); *Ctr. for Biological Diversity v. Dep't of Interior*, 563 F.3d 466, 477 (D.C. Cir. 2009) ("Point Hope does not allege anywhere that it has suffered its own individual harm"); *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 181 (S.D.N.Y. 2017) (plaintiff failed to "include a single example or give any details whatsoever as to any actual injury" from defendant's conduct) (internal quotation marks omitted).

Defendants' argument that the chain of causation is broken by the City's inability to trace molecules back to each defendant and by the independent actions of consumers, Br. 35, ignores two core principles of standing.  First, standing "is gauged by the specific common-law, statutory or constitutional claims that a party presents."  *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991).  Second, the requirements of Article III standing may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  As set forth in the City's separate brief responding to ConocoPhillips' proximate cause arguments, in a tort case it is no defense that there are many other contributors to an indivisible harm—and thus no requirement to trace intermixed molecules back to individual contributors.  The proximate cause standard in tort also precludes a defense based upon foreseeable actions of third parties.  The standing bar cannot be higher than these standards on the merits.[25]

Defendants also wrongly argue that the chain of causation is too long.  Br. 35.  But this contradicts *Massachusetts*, where the Supreme Court, after reviewing record evidence, accepted a causal chain virtually identical to that alleged here.  *See* 549 U.S. at 521-22.  This case is at the pleadings stage.  Moreover, the length of a causal chain is not the proper focus—instead the Court must evaluate whether each link requires a high degree of speculation.  *See Allen v.*

---

[25] *See also Nw. Envtl. Def. Ctr. v. Owens Corning Corp.*, 434 F. Supp. 2d 957, 967 (D. Or. 2006) ("While Defendant is not the sole entity allegedly discharging pollutants into the atmosphere that may adversely impact the Plaintiffs, the 'fairly traceable' element does not require that a plaintiff show to a scientific certainty that the defendant's emissions, and only the defendant's emissions, are the source of the threatened harm.").  Defendants' cases, Br. 35, are distinguishable.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43 (1976) (plaintiffs challenged tax exemptions for hospitals that denied care to the indigent but it was entirely unknowable whether the denial of care "instead result[ed] from decisions made by the hospitals without regard to the tax implications"); *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1145-46 (9th Cir. 2013) (on summary judgment, plaintiffs did "not provide any evidence" that defendants—responsible for only 5.9% of GHG emissions *in one state*—"are a meaningful contribution to global GHG levels"); *Adelphia Recovery Trust v. Bank of Am., N.A.*, 2010 WL 2077214, at *6-7 & n.10 (S.D.N.Y. May 14, 2010) (failure of proof on summary judgment).

.

*Wright*, 468 U.S. 737, 758 (1984); *accord Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008).  Here, each link is governed by the laws of physics and chemistry and the scientific community has reached consensus on each of these links such that global warming and its attendant injuries to the City are now occurring and will continue to occur.  AC ¶¶ 69-72.

Finally, the compensatory damages (and the *Boomer* injunction that would be ineffective "unless the defendant failed to pay," 26 N.Y.2d at 228), satisfies redressability.  Defendants' argument that climate change will continue is beside the point in a case seeking damages.

**D.     Federal common law does not require dismissal.**

    **1.     Defendants fail to demonstrate that federal common law displaces state law.**

Defendants contend that federal common law displaces the City's state law claims.  But the instances where courts have used federal common law to displace state law are "few and restricted."  *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (quotation marks and citations omitted).  Indeed, *O'Melveny* "expressed a distinct distaste for displacing state law," *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 128 (2d Cir. 1999), and, as this Court has held, created a "general proscription against creating federal common law."  *FDIC v. Abel*, 1995 WL 716729, at *5 (S.D.N.Y. Dec. 6, 1995).

This proscription has only grown stronger over time: the ability of federal courts to displace state law with federal common law is now "severely limited."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005) (quotation marks omitted), *aff'd*, 547 U.S. 677 (2006).  The Second Circuit takes a notoriously narrow approach to displacing state law with federal common law.  *See, e.g.*, *Woodward Governor*, 164 F.3d at 128 (rejecting Ninth Circuit case embracing federal common law as "flawed"); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit L.P.*, 491 B.R. 335, 349 (S.D.N.Y. 2013) ("Second Circuit [is] loath to use federal common law to displace state law.").  Absent congressional authorization, federal common law

- 26 -

displaces state law only where the "operation of state law would: (1) significantly conflict with (2) uniquely federal interests." *Empire Healthchoice*, 396 F.3d at 140.  Defendants have not satisfied these elements.

    *Significant conflict.*  "[A]n actual, significant conflict between a federal interest and state law must specifically be shown, and not generally alleged."  *Woodward Governor*, 164 F.3d at 127.  And the defendants bear a "substantial burden" to establish such a conflict.  *Id.*  Here, the City bases liability on defendants' production and sale of fossil fuels—not defendants' direct emissions of GHGs.  AC ¶ 14.  The Second Circuit has held that federal common law does not displace state law in a damages case against a product manufacturer, even where the product (Agent Orange) was used in foreign countries.  *In re "Agent Orange" Prod. Liab. Litig.*, 635 F.2d 987, 994 (2d Cir. 1980).  Like *In re "Agent Orange"*, this case bases liability on the production and sale of products—not on the emissions of interstate pollution, as in the cases defendants cite.  *See* Br. 9-12.

    Defendants contend there is a general need for uniformity.  Br. 10-11.  But such "generalized pleas for uniformity do not sufficiently allege an actual conflict between state law and a federal interest."  *Woodward Governor*, 164 F.3d at 129 (quotation omitted).  Otherwise, the federal courts would be swimming in federal common law given the number of products that are sold and consumed nationally and internationally.  *See In re "Agent Orange"*, 635 F.2d at 994 ("The fact that application of state law may produce a variety of results is of no moment.  It is in the nature of a federal system that different states will apply different rules of law . . . ."); *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1324 (5th Cir. 1985) (*en banc*) ("Clearly, if federal courts are to remain courts of limited powers as required under *Erie*, a dispute . . .

- 27 -

cannot become 'interstate,' in the sense of requiring the application of federal common law, merely because the conflict is not confined within the boundaries of a single state.").

***Uniquely federal interest***.  Defendants also fail to argue that there is a *uniquely* federal interest in a case against producers of fossil fuels.  Indeed, the Second Circuit, in *In re "Agent Orange"*, 635 F.2d at 994, rejected the argument that there is a uniquely federal interest in a damages case against producers and sellers of products, even though the court recognized the "obvious interests" of the United States in both the welfare of its veterans and in ensuring the supplies of war materiel.  *Id*. at 994-95.  The court held that state law, not federal common law, must nonetheless apply.

Similarly, in *Jackson*, the Fifth Circuit held that state tort law, not federal common law, governed cases against manufacturers of asbestos even as it acknowledged the national interests at stake: "'[u]niquely federal interests' are not merely national interests, and the existence of national interests, no matter their significance, cannot by themselves give federal courts the authority to supersede state policy."  750 F.2d at 1324-25.[26]  Defendants' contention that there is a national interest in climate change does not carry their burden to establish a "[u]niquely federal interest" to displace state tort law.  States and cities, too, have important interests in climate change.  *See* section II.B.  States also have an interest in applying their law to local harms to the environment caused by fossil fuel products.  *See MTBE*, 725 F.3d 65.

Defendants' federal common law argument relies heavily upon two prior global warming cases:  *AEP* and *Kivalina*.  However, these cases were not brought against producers of fossil fuels, but instead against direct emitters of interstate pollution; federal common law has long

---

[26] Defendants' reliance on *United States v. Standard Oil Co.*, 332 U.S. 301 (1947), Br. 8, is misplaced as that case turned on a uniquely federal interest not present here: "Perhaps no relation between the Government and a citizen is more distinctively federal in character than that between it and members of its armed forces."  *Id*. at 305.

applied to the latter.[27]  As defendants admit, the Supreme Court has applied federal common law

in "suits brought by one State to abate pollution emanating from another State." Br. 9.  And in

both cases the plaintiffs—unlike the City here—expressly pleaded federal common law in their

complaints, so neither case considered whether a purely state-law case must be displaced by

federal common law—or even mentioned "uniquely federal interests" or "significant conflict."

In fact, *AEP* and *Kivalina* undercut defendants' argument because both cases *preserved*

state common law claims that the plaintiffs in those cases had pled in the alternative.  *AEP*, 564

U.S. at 429 ("None of the parties have . . .  addressed the availability of a claim under state

nuisance law.  We therefore leave the matter open for consideration on remand."); *Kivalina*, 696

F.3d at 866 (Pro, J., concurring) ("The district court below dismissed Kivalina's state law

nuisance claim without prejudice to refiling it in state court, and Kivalina may pursue whatever

remedies it may have under state law to the extent their claims are not preempted.").  This

disposition of state law claims in *AEP* and *Kivalina* cannot be squared with defendants' argu-

ment here, *see* Br. 11-12, that state common law can *never* apply to a climate change tort case.

And the narrow role that defendants envision for state law in interstate pollution cases, *i.e.*, "to

limit a defendant's emissions," Br. 12, is not even at issue in this case against producers.

A federal district court in California recently held that *AEP* and *Kivalina* do not require

federalizing state law claims for climate change injuries against producers: "Because federal

common law does not govern the plaintiffs' claims, it also does not preclude them from asserting

the state law claims in these lawsuits."  *County of San Mateo v. Chevron Corp.*, 2018 WL

---

[27] *See, e.g.*, *Illinois v. City of Milwaukee*, 406 U.S. 91, 93 (1972) (*Milwaukee I*) (sewage discharges into Lake Michigan); *New Jersey v. City of New York*, 283 U.S. 473, 476 (1931) (garbage dumping into ocean); *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 236 (1907) (discharges of sulfurous gas); *Missouri v. Illinois*, 180 U.S. 208, 214 (1901) (sewage discharges).  Defendants claim that *AEP* and *Kivalina* broadly address all claims based on "global-warming related tort claims" or "global warming-related injuries," Br. 9-11, but those cases in fact only address claims against dischargers of interstate pollution.

1414774, at *1 (N.D. Cal. Mar. 16, 2018), *appeal pending*, No. 18-15499 (9th Cir.).  To be sure,

as defendants note, another district court in California has held that federal common law *does*

govern such claims.  *California v. BP P.L.C.*, 2018 WL 1064293, at *2-4 (N.D. Cal. Feb. 27,

2018) (*BP*).  But *BP* finds, like *County of San Mateo*, that "when congressional action displaces

federal common law, state law becomes available to the extent it is not preempted by statute."

*Id*. at *4.  Both of these cases thus refute defendants' position that federal law applies exclusively

such that state common law can never apply in a global warming tort case.[28]

Finally, defendants' argument that the federal Clean Air Act's "comprehensive federal

regulatory scheme" requires application of federal common law, *see* Br. 11, has the law exactly

backwards.  "[W]here federal statutory regulation is 'comprehensive and detailed,' . . . we

presume that matters left unaddressed are 'left subject to the disposition provided by state law.'"

*Marsh v. Rosenbloom*, 499 F.3d 165, 181 (2d Cir. 2007) (quoting *O'Melveny*, 512 U.S. at 85).

Here, the CAA does not regulate the production or sale of fossil fuels at all.

### 2.    Alternatively, the City has stated a proper federal common law claim.

In the alternative, to the extent the Court may find that federal common law applies here,

the City has pleaded proper facts that, if proven, constitute "an unreasonable interference with a

right common to the general public," which is the definition of a public nuisance under federal

(or state) common law.  Restatement § 821B; *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d

765, 781 (7th Cir. 2011) (adopting Restatement definition in federal nuisance case); *AEP*, 582

F.3d at 352 ("We believe the Restatement definition provides a workable standard for assessing

---

[28] After the *BP* court ruled that federal common law applies, the plaintiffs in that case amended their state law complaints to add a federal common law claim but did so expressly in order to "conform" their pleading to the *BP* court's ruling, which is law of the case. The *BP* plaintiffs have preserved their objection to the federalization of their state law claim. First Amended Complaint for Public Nuisance ¶ 138 in Nos. 3:17-cv-06011-WHA, 3:17-cv-06012-WHA (N.D. Cal.).

whether the parties have stated a claim under the federal common law of nuisance.").

Defendants do not dispute that the City has properly pled these essential elements.

### a) If federal law applies, the Clean Air Act does not displace a federal common law claim against producers of fossil fuels.

It is common ground here that the CAA would displace a federal common law public nuisance claim seeking abatement of greenhouse gas emissions from out of state.  That is the holding of *AEP*.  But defendants' argument that the CAA also displaces global warming claims against producers of fossil fuels is incorrect.  Displacement of federal common law occurs only where Congress has spoken *directly* to the *particular* issue, as the Supreme Court has emphasized:

> In determining whether a federal statute pre-empts common-law causes of action, the relevant inquiry is whether the statute "[speaks] *directly* to [the] question" otherwise answered by federal common law.  *Milwaukee II*, *supra*, at 315 (emphasis added).  As we stated in *Milwaukee II*, federal common law is used as a "necessary expedient" when Congress has not "spoken to a *particular* issue."

*County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236-37 (1985).  Additionally, there is a presumption against displacement of federal common law.  *United States v. Texas*, 507 U.S. 529, 534 (1993).

In *Oneida*, the defendants argued that a federal common law claim for illegal occupation of Native American lands was displaced by a federal statute prohibiting divestiture of such lands and authorizing the President to forcibly remove illegal occupants of aboriginal lands.  The Court disagreed.  Because the statute did not "address directly the problem of restoring unlawfully conveyed lands to the Indians," it did not displace the Indians' federal common law claim for ejectment.  Likewise, here the CAA does not regulate the production and sale of fossil fuels.  There is no such thing as a CAA permit to drill for oil or natural gas or to sell fossil fuels.  Nor is there a CAA remedy of any kind for injuries arising from the production and sales of fossil fuels.

The Court also rejected displacement in *Exxon Shipping Co. v. Baker*, 554 U.S. 487 (2008), where it held that the Clean Water Act did not by omission evince an intent to "eliminate, *sub silentio*" common law tort claims for monetary damages: "we see no clear indication of congressional intent to occupy the entire field of pollution remedies." *Id*. at 489. Thus, defendants' contention—that "Congress has displaced . . . federal tort remedies by failing to include them in the regulatory scheme established in the Clean Air Act," Br. 12—again has the law exactly backwards. "Congress's mere refusal to legislate . . . falls far short of an expression of legislative intent to supplant existing [federal] common law in that area." *Texas*, 507 U.S. at 535 (quotation omitted). Similarly, the Second Circuit has distinguished between "re-writing rules that Congress has affirmatively and specifically enacted," and "filling a gap left by Congress' silence." *In re Oswego Barge Corp.*, 664 F.2d 327, 339 (2d Cir. 1981).

Here, because the activities here are entirely outside the "scope of the legislation," *id*. (quotation omitted), the City's claims are not displaced. *See also Michigan*, 667 F.3d at 780 ("Tellingly, Congress has not provided any enforcement mechanism or recourse for any entity or party negatively affected . . . and there is certainly no recourse to the courts . . . ."). As the court held in *BP* (a decision defendants embrace):

> *AEP* and *Kivalina* . . . did not recognize the displacement of the federal common law claims raised here. Emissions from domestic sources are certainly regulated by the Clean Air Act, but plaintiffs here have fixated on . . . the earlier moment of production and sale of fossil fuels, not their combustion.

*BP*, 2018 WL 1064293, at *4.[29] *BP* also rejected displacement because defendants produce and sell fossil fuels globally while the CAA applies only domestically. *Id*.; *accord Oswego Barge*, 664 F.2d at 344-345 (no displacement of maritime tort for pollution occurring in Canada).

---

[29] Contrary to defendants' representation, Br. 13, the plaintiffs in *BP* took the same position as the City takes here, *i.e.*, that a federal common law claim against dischargers of interstate pollution is displaced, which they distinguished from their case against producers. And while *County of San Mateo* held federal common law to be

Finally, defendants are simply wrong that the "unreasonable" element of public nuisance will require the Court to engage in a harm-utility balancing test, which defendants say would intrude on the job Congress gave to EPA.  Br. 15.  There is no balancing in a case alleging severe harm: an "intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm resulting from the invasion is severe and greater than the other should be required to bear without compensation."  Restatement § 829A; *id*. cmt. b ("certain types of harm may be so severe as to require a holding of unreasonableness as a matter of law, *regardless of the utility of the conduct*.") (emphasis added).  In support of their "balancing" argument defendants direct the Court to *California v. General Motors Corp.*, 2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) (*GM*), but fail to disclose that *GM* was based upon the political question doctrine, not displacement, and, under *Kivalina*, is no longer good law.  *See supra* section IV.C.2. Defendants also rely upon *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 865 (S.D. Miss. 2012), *aff'd on other grounds*, 718 F.3d 460 (5th Cir. 2013).  But that case addressed preemption of state law rather than displacement of federal common law.  And the decision is at odds with a prior Fifth Circuit opinion in the same case that is persuasive authority.[30]  In short, if federal common law applies, the Clean Air Act does not displace the City's claims.

### b)   If federal law applies, the City has pled viable claims.

The City has stated proper nuisance and trespass claims, regardless of whether federal or state law applies.  Federal common law borrows state law rules of decision and looks to the

---

displaced.  2018 WL 1414774, at *1, that decision undercuts defendants' position here by finding that where Congress has displaced federal common law, then such law "no longer exists" and therefore "does not preclude [plaintiffs] from asserting the state law claims in these lawsuits."  *Id.*

[30] *See Comer v. Murphy Oil USA*, 585 F.3d 855, 879 (5th Cir. 2009) (finding "the clear inapplicability of federal preemption in this case"), *vacated for en banc review*, 598 F.3d 208 (5th Cir. 2010) (*en banc*); *appeal dismissed for failure of quorum*, 607 F.3d 1049 (5th Cir. 2010) (*en banc*).

Restatement.[31]  As set forth above, New York nuisance and trespass law, which also look to the Restatement, permit a manufacturer to be held liable for producing a lawful product, particularly when it knows that its product will be released into the environment with harmful consequences. Defendants have set forth no basis for concluding that federal common law would conflict with the foregoing state law authorities interpreting nuisance and trespass law.  *See Shay v. RWC Consulting Gp.*, 2014 WL 3421068, at *33 (D.N.M. June 30, 2014) ("as there is no federal common law directly on point, the Court would look to state law sources to inform its determination of federal common law regardless [and thus] the Court concludes that the choice-of-law issue presents a false conflict").  Indeed, defendants make no argument at all that federal common law of nuisance and trespass would not apply to a manufacturer that produces a product knowing it will escape into the environment with harmful consequences.

Defendants instead argue that federal common law is limited to the "'bounded pollution giving rise to past federal nuisance suits.'"  Br. 16 (quoting *AEP*, 564 U.S. at 422).  But defendants have misquoted the Supreme Court, which was merely characterizing the argument of the defendants in that case.  *AEP*, 564 U.S. at 422 ("The defendants argue that considerations of scale and complexity distinguish global warming from the more bounded pollution giving rise to past federal nuisance suits.").  They also fail to note that the Court declined to address this issue: "We need not address the parties' dispute in this regard."  *Id.* at 423.

Defendants' cursory proximate cause argument under federal law, based solely on *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999), fares no better.  There the plaintiff's injuries were entirely derivative of harms to third parties.

---

[31]*Milwaukee I*, 406 U.S. at 103 n.5; *North Dakota v. Minnesota*, 263 U.S. 365, 372 (1923); *AEP*, 582 F.3d at 352; *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1352-54 (Fed. Cir. 2001).

*Id.* at 239.  Here, conversely, the City brings claims for its own injuries and to protect the public.  *See, e.g.*, *AEP*, 582 F.3d at 358-71; *New York Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 83-84 (1949) (municipality is proper party to bring nuisance claim to protect the public).  Defendants also contend that the actions of consumers in combusting defendants' products was an intervening cause.  But these actions were entirely foreseeable.  *See Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) (under federal common law, defendant may be liable for "reasonably foreseeable intervening forces").  Combustion was, in fact, the precise purpose for which defendants produced, sold, and promoted their products—and continue to do so.

Finally, defendants' additional arguments made in footnotes, Br. 16 nn.10, 11 (and also Br. 5 n.4, 19 n.14, 22 nn.16-17, 29 n.23), are waived.  *Cox v. Vill. of Pleasantville*, 271 F. Supp. 3d 591, 607 (S.D.N.Y. 2017) ("Arguments which appear in footnotes are generally deemed to have been waived."); *Lehman Bros. Holdings v. United States*, 2015 WL 2359256, at *8 (S.D.N.Y. May 8, 2015) (same).  Federal common law does not require dismissal.

## V.    CONCLUSION

For these reasons, the City respectfully requests that the motion to dismiss be denied.

Dated:          April 25, 2018

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for Plaintiff
100 Church Street
New York, New York 10007
(212) 356-2070

By:    /s/ Susan E. Amron
Susan E. Amron, samron@law.nyc.gov
Kathleen C. Schmid, kschmid@law.nyc.gov
Margaret C. Holden, maholden@law.nyc.gov
(admitted *pro hac vice*)
Noah Kazis, nkazis@law.nyc.gov
(admitted *pro hac vice*)

- 35 -

*Of Counsel*

STEVE W. BERMAN (admitted *pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

MATTHEW F. PAWA
mattp@hbsslaw.com
BENJAMIN A. KRASS (admitted *pro hac vice*)
benk@hbsslaw.com
WESLEY KELMAN
wesk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Telephone: (617) 641-9550
Facsimile: (617) 641-9551

CHRISTOPHER A. SEEGER
STEPHEN A. WEISS
DIOGENES P. KEKATOS
CSeeger@seegerweiss.com
SWeiss@seegerweiss.com
DKekatos@seegerweiss.com
**SEEGER WEISS LLP**
77 Water Street
New York, New York 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

- 36 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF NEW YORK,

Plaintiff,

v.                                                            Case No. 18-cv-182-JFK

BP P.L.C.; CHEVRON CORPORATION;
CONOCOPHILLIPS; EXXON MOBIL
CORPORATION; and ROYAL DUTCH
SHELL PLC,

Defendants.

## AFFIRMATION OF SERVICE

I, Benjamin A. Krass, declare under penalty of perjury that I caused a copy of Plaintiff

the City of New York's Memorandum of Law in Opposition to Defendants' Motion to Dismiss

Plaintiff's Amended Complaint dated April 25, 2018, to be served upon the parties listed on

Exhibit A by email on April 25, 2018.

HAGENS BERMAN SOBOL SHAPIRO LLP

By:    /s/Benjamin A. Krass
        Benjamin A. Krass (admitted *pro hac vice*)
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Telephone: (617) 641-9550

- 37 -

# Exhibit A

| | |
|---|---|
| Philip H. Curtis<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 836-7199<br>Email: philip.curtis@arnoldporter.com<br><br>*Counsel to BP P.L.C.* | John F. Savarese<br>Ben M. Germana<br>Jonathan Siegel<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York  10019<br>Telephone: (212) 403-1000<br>Email:  JFSavarese@wlrk.com<br>          bmgermana@wlrk.com<br>          JRSiegel@wlrk.com<br><br>Tracie J. Renfroe<br>Carol M. Wood<br>King & Spalding LLP<br>1100 Louisiana Street, Suite 4000<br>Houston, Texas  77002<br>Telephone: (713) 751-3200<br>Email: trenfroe@kslaw.com<br>          cwood@kslaw.com<br><br>*Counsel for ConocoPhillips* |
| Anne Champion<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-5361<br>Email: achampion@gibsondunn.com<br><br>*Counsel to Chevron Corporation* | |
| Jaren Janghorbani<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3211<br>Email: jjanghorbani@paulweiss.com<br><br>*Counsel to Exxon Mobil Corporation* | |
| Daniel P. Collins<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 683-9125<br>Email: daniel.collins@mto.com<br><br>*Counsel to Royal Dutch Shell PLC* | |