**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CITY OF NEW YORK,

                Plaintiff,

    v.

BP P.L.C.; CHEVRON CORPORATION;
CONOCOPHILLIPS; EXXON MOBIL CORPORATION;
and ROYAL DUTCH SHELL PLC,

                Defendants.

Case No. 18 Civ. 182 (JFK)

**CONOCOPHILLIPS' MEMORANDUM OF LAW ADDRESSING INDIVIDUAL ISSUES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendant ConocoPhillips*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 3

    I.      In addition to being barred by Supreme Court precedent, plaintiff's claims against ConocoPhillips are barred by well-settled common law principles of proximate cause. ...................................................................................................... 4

    II.    There is no personal jurisdiction over ConocoPhillips. ....................................... 10

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Am. Elec. Power Co.* v. *Connecticut*,
   564 U.S. 410 (2011) ........................................................................................... 1, 2, 3, 4

*Am. Lecithin Co.* v. *Rebmann*,
   2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017) ............................................... 13, 15

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 3, 9

*Ass'n of Wash. Pub. Hosp. Dists.* v. *Philip Morris Inc.*,
   241 F.3d 696 (9th Cir. 2001) ............................................................................ 7, 9 n.5

*Atl. Recording Corp.* v. *Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ................................................................. 3 n.2

*Barklee 94 LLC* v. *Oliver*,
   124 A.D.3d 459 (1st Dep't 2015) ......................................................................... 8 n.3

*Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., S.F. Cty.*,
   137 S. Ct. 1773 (2017) ................................................................................ 10, 12, 16

*Brown* v. *Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016) ..................................................................................... 11

*Chew* v. *Dietrich*,
   143 F.3d 24 (2d Cir. 1998) ....................................................................................... 16

*City of New York* v. *Coll. Point Sports Ass'n, Inc.*,
   61 A.D.3d 33 (2d Dep't 2009) .............................................................................. 8 n.3

*Daimler AG* v. *Bauman*,
   134 S. Ct. 746 (2014) ......................................................................................... 10, 11

*Distributorsoutlet.com, LLC* v. *Glasstree, Inc.*,
   2016 WL 3248310 (E.D.N.Y. June 10, 2016) .................................................... 3 n.2

*Doron Precision Sys., Inc.* v. *FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006) ................................................................. 3 n.2

*Ehrenfeld* v. *Bin Mahfouz*,
   2006 WL 1096816 (S.D.N.Y. Apr. 26, 2006) ........................................................ 11

*FIMBank P.L.C.* v. *Woori Fin. Holdings Co.*,
   104 A.D.3d 602 (1st Dep't 2013) ............................................................................ 15

*Gurvey* v. *Cowan, Liebowitz & Latman, PC*,
   2009 WL 691056 (S.D.N.Y. Mar. 17, 2009) ......................................................... 14

*Hamilton* v. *Beretta USA Corp.*,
   96 N.Y.2d 222 (2001) ................................................................................................ 5

*In re MTBE Prods. Liab. Litig.*,
　959 F. Supp. 2d 476 (S.D.N.Y. 2013) ............................................ 14

*In re N.Y.C. Asbestos Litig.*,
　112 A.D.3d 529 (1st Dep't 2013) .................................................. 15

*In re Platinum & Palladium Antitrust Litig.*,
　2017 WL 116926 (S.D.N.Y. Mar. 28, 2017) ................................. 12

*In re Terrorist Attacks on Sept. 11, 2001*,
　714 F.3d 118 (2d Cir. 2013) .................................................... 9 n.4

*Int'l Bhd. of Teamsters* v. *Philip Morris Inc.*,
　196 F.3d 818 (7th Cir. 1999) ......................................................... 7

*Jazini* v. *Nissan Motor Co.*,
　148 F.3d 181 (2d Cir. 1998) ........................................................ 13

*Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*,
　26 F. Supp. 2d 593 (S.D.N.Y. 1998) ........................................... 14

*Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*,
　191 F.3d 229 (2d Cir. 1999) ............................................ 5, 6, 9 & n.5

*LPD N.Y., LLC* v. *Adidas Am., Inc.*,
　2017 WL 1162181 (E.D.N.Y. Mar. 27, 2017) .............................. 13

*Lyons* v. *Philip Morris Inc.*,
　225 F.3d 909 (8th Cir. 2000) ......................................................... 7

*MacDermid, Inc.* v. *Deiter*,
　702 F.3d 725 (2d Cir. 2012) ........................................................ 10

*Megna* v. *Biocomp Labs. Inc.*,
　166 F. Supp. 3d 493 (S.D.N.Y. 2016) .......................................... 10

*Muller-Paisner* v. *TIAA*,
　289 F. App'x 461 (2d Cir. 2008) (summary order) ...................... 3 n.2

*N.Y. Trap Rock Corp.* v. *Town of Clarkstown*,
　299 N.Y. 77 (1949) ........................................................................ 6

*Nat'l R.R. Passenger Corp.* v. *McDonald*,
　978 F. Supp. 2d 215 (S.D.N.Y. 2013) ........................................ 8 n.3

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Stroh Cos.*,
　265 F.3d 97 (2d Cir. 2001) .......................................................... 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA.* v. *BP Amoco P.L.C.*,
　319 F. Supp. 2d 352 (S.D.N.Y. 2004) .......................................... 14

*Native Village of Kivalina* v. *ExxonMobil Corp.*,
　696 F.3d 849 (9th Cir. 2012) ..................................................... 2, 4

*Nypl* v. *JPMorgan Chase & Co.*,
　2018 WL 472506 (S.D.N.Y. Mar. 22, 2018) ........................... 13, 15

*Or. Laborers-Emps. Health & Welfare Tr. Fund* v. *Philip Morris Inc.*,
    185 F.3d 957 (9th Cir. 1999) ................................................................. 7

*People* v. *Sturm, Ruger & Co.*,
    309 A.D.2d 91 (1st Dep't 2003) ....................................................... 5, 6, 7

*Richbell Info. Servs., Inc.* v. *Jupiter Partners, L.P.*,
    309 A.D.2d 288 (1st Dep't 2003) ........................................................... 14

*Schumacher* v. *Richards Shear Co.*,
    59 N.Y.2d 239 (1983) ............................................................................ 15

*Semenetz* v. *Sherling & Walden, Inc.*,
    21 A.D.3d 1138 (3d Dep't 2013) ........................................................... 15

*Serv. Emps. Int'l Union Health & Welfare Fund* v. *Philip Morris Inc.*,
    249 F.3d 1068 (D.C. Cir. 2001) .............................................................. 6

*Societe Generale* v. *Fla. Health Scis. Ctr., Inc.*,
    2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003) ...................................... 15

*Sonera Holding B.V.* v. *Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ................................................................. 11

*Steamfitters Local Union No. 420 Welfare Fund* v. *Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ....................................................... 7, 9 n.5

*Tex. Carpenters Health Benefit Fund* v. *Philip Morris Inc.*,
    199 F.3d 788 (5th Cir. 2000) .................................................................. 7

*United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund* v.
    *Philip Morris, Inc.*,
    223 F.3d 1271 (11th Cir. 2000) .............................................................. 7

*Wiwa* v. *Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) ................................................................... 10

The amended complaint barely mentions ConocoPhillips. Because nothing ConocoPhillips is alleged to have done is the proximate cause of the City's injuries, and because there is no personal jurisdiction, ConocoPhillips submits this short memorandum to address those issues.

## PRELIMINARY STATEMENT

This is not the first time New York City has brought a meritless action in the Southern District of New York seeking to blame industry for claimed injuries due to global warming. In 2004, the City sued the parties that it then claimed were the "direct and proximate" cause of global warming — *not* the oil and gas industry, but the largest *emitters* of carbon dioxide in the United States, five major electric power companies. Ex. 1 ¶¶ 98-100, 158.[1] Recognizing in its 2004 complaint that the "primary factor" leading to global warming was the "rate of *emissions* of greenhouse gases and, in particular, of carbon dioxide," the City sued the parties it alleged to be responsible for those emissions. *Id.* ¶¶ 147, 158 (emphasis added). The City's 2004 complaint stated that global warming was "alter[ing] the climate of the United States"; that there was a "clear scientific consensus" that "global warming is caused by emissions of greenhouse gases"; and that the City was suffering and would suffer "hundreds of billions of dollars in damages" as a result of "severe flooding from global warming-induced sea level rise." *Id.* ¶¶ 3, 79, 114.

The City's 2004 complaint failed. The case went all the way to the Supreme Court, which unanimously held that the City's claims under federal common law were displaced by the Clean Air Act's comprehensive scheme addressing the matter. *Am. Elec. Power Co.* v. *Connecticut*, 564 U.S. 410, 424 (2011) ("*AEP*"), *rev'g* 582 F.3d 309 (2d Cir. 2009), *rev'g* 406 F. Supp. 2d 265 (S.D.N.Y. 2005).

Despite the failure of its 2004 case, the City is now back again. This time, the City attempts to reach *further back* in the causal chain, to bring essentially the same lawsuit — only now against oil and gas *producers* (and/or their corporate parents). The City is not the first to try

---

[1] Complaint in *State of Connecticut, et al.* v. *Am. Elec. Power Co., et al.*, Case No. 04 Civ. 5669 (LAP) (S.D.N.Y. July 21, 2004), ECF No. 1. The Exhibits cited herein are submitted with the accompanying Declaration of Jonathan Siegel dated March 30, 2018.

that gambit.  The City of Kivalina, Alaska brought nearly identical claims ten years ago, naming both power companies *and* oil and gas companies — including ConocoPhillips' oil and gas subsidiary.  The Ninth Circuit rejected the claims against the oil and gas companies for the reasons given by the Supreme Court in *AEP*.  *Native Village of Kivalina* v. *ExxonMobil Corp.*, 696 F.3d 849, 856-57 (9th Cir. 2012).

As shown in the Memorandum of Law of Chevron Corporation, ConocoPhillips, and Exxon Mobil Corporation Addressing Common Grounds in Support of Their Motions to Dismiss Plaintiff's Amended Complaint ("Common Brief"), the City's amended complaint here is barred for those same reasons.  Given the nature of the claims asserted and the unique federal interests implicated, the City's claims are governed by federal, not state, law, and any such federal common law claim is displaced.  *See* Common Brief 7-15.  ConocoPhillips joins in all of the grounds for dismissal set forth in the Common Brief and submits that the amended complaint should be dismissed for all of the reasons there given.

ConocoPhillips files this short separate brief to stress that the City's claims, whether governed by federal or state law, in all events fail against ConocoPhillips for a very basic reason: lack of proximate cause.  Oil and gas exploration and production is not a tort.  And under well-settled principles of proximate cause, any connection between that (lawful) activity and the City's claimed harm is far too indirect to support a valid tort claim.  Numerous courts — including the Second Circuit and New York state courts — have rejected similar attempts to stretch the bounds of causation in this manner, including in suits against the gun and tobacco industries.  *See* pp. 4-9, *infra*.  There is no need to reinvent the wheel.

Perhaps recognizing this fundamental problem, the City attempts to dress up its theory with other allegations seemingly directed at causation:  It alleges that various statements made by certain of the defendants created confusion as to the existence and causes of global warming, which resulted in fossil fuel consumption that otherwise would not have taken place.  Am. Complt. ¶¶ 94-116.  But as the Second Circuit and other courts have made clear, such allegations do not satisfy the proximate cause requirement.  *See* pp. 9-10, *infra*.

And regardless, the 75-page amended complaint is bereft of allegations of any such statement made by *ConocoPhillips*. That is so even after ConocoPhillips spelled out this flaw in its motion to dismiss the original complaint. Ex. 5 at 3, 9. This is no drafting oversight. Since 2003, ConocoPhillips has made clear on its website: "ConocoPhillips recognizes that human activity, including the burning of fossil fuels, is contributing to increased concentrations of greenhouse gases in the atmosphere that can lead to adverse changes in global climate."[2]

The amended complaint still refers to only *two* statements allegedly made by ConocoPhillips (or its subsidiaries) at all: (1) a statement by a Canadian subsidiary that Canadian tar sands would be "a significant part of the world's energy future"; and (2) a statement on ConocoPhillips' website that it "responsibly suppl[ies] the energy that powers modern life." Am. Complt. ¶¶ 78, 109(e). Even putting aside ConocoPhillips' clear and specific statement about global warming's reality quoted above, it is utterly implausible that either of these perfectly anodyne statements could ever have confused anyone about global warming. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

Finally, there is an additional ground for dismissal. There is no personal jurisdiction over ConocoPhillips. *See* Point II, *infra*.

### ARGUMENT

In *AEP*, the Supreme Court rejected the City's prior attempt to sue industry (that time, major electric power companies) for injuries it claimed were due to global warming. The Court

---

[2] Ex. 2 (2003 ConocoPhillips statement on global warming); *see also* Ex. 3 (ConocoPhillips' present statement; same). The 2003 statement, previously available on ConocoPhillips' website, is available through the Internet Archive Wayback Machine. "[C]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned under Federal Rule of Evidence 201," *Distributorsoutlet.com, LLC* v. *Glasstree, Inc.*, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016), and "[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website," *Doron Precision Sys., Inc.* v. *FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006); *see also Muller-Paisner* v. *TIAA*, 289 F. App'x 461, 466 n.5 (2d Cir. 2008) (summary order) ("Judicial notice may be taken of the defendants' website for the fact of its publication."). In addition, because the amended complaint itself cites to former versions ConocoPhillips' website (Am. Complt. ¶ 109(e) & n.83), the court may consider other material from ConocoPhillips' past and current websites. *See Atl. Recording Corp.* v. *Project Playlist, Inc.*, 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009) (Chin, J.).

observed that "[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law." *AEP*, 564 U.S. at 421. Because it found that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants," the Court had no need to decide the "academic question whether, in the absence of the Clean Air Act and the EPA actions the Act authorizes, the plaintiffs could state a federal common law claim." *Id*. at 423-24.

Thereafter, the Ninth Circuit held that the Supreme Court's decision in *AEP* forecloses global-warming lawsuits against oil and gas companies as well. The court rejected the complaint brought by the City of Kivalina, Alaska, holding that, under *AEP*, such claims were barred against the power and oil defendants alike (including ConocoPhillips' oil and gas subsidiary). *Kivalina*, 696 F.3d at 856.

As detailed fully in the Common Brief, this Court should likewise so conclude. Under *AEP*, given the nature of the claims asserted and the unique federal interests implicated, the City's claims are governed by federal common law, which is displaced. *See* Common Brief 12-15. And any purported state-law claims are likewise so foreclosed. *See id.* 8-12. Indeed, as the Common Brief further explains, were the City's claims not foreclosed by these threshold defects, a welter of constitutional and other problems would ensue. *See id.* 16-26, 31-35.

ConocoPhillips files this separate brief to highlight two additional reasons why the City's amended complaint should be dismissed as to ConocoPhillips: lack of proximate causation and lack of personal jurisdiction.

**I.     In addition to being barred by Supreme Court precedent, plaintiff's claims against ConocoPhillips are barred by well-settled common law principles of proximate cause.**

Even if the City's amended complaint were somehow not foreclosed by *AEP* and its progeny, it would plainly be barred by longstanding and well-settled principles of proximate cause. Whether the City's claim is governed by federal common law or arises under New York state law, the basic requirement of proximate causation applies. And as a matter of settled law, including

Second Circuit and New York cases rejecting parallel suits against the gun and tobacco industries, the City does not and cannot plead proximate causation.

The New York Appellate Division, First Department's decision in New York's public nuisance suit against gun manufacturers is instructive. Applying the "longstanding" principle that claims are barred "where the causal connection between the alleged business conduct and harm is too tenuous and remote," the Court held that the "harm plaintiff alleges is far too remote from defendants' otherwise lawful commercial activity to fairly hold defendants accountable for common-law public nuisance." *People* v. *Sturm, Ruger & Co.*, 309 A.D.2d 91, 95, 103 (1st Dep't 2003).

In so holding, moreover, the First Department relied upon the decision of the New York Court of Appeals in *Hamilton* v. *Beretta USA Corp.*, where the Court of Appeals, in a unanimous opinion by Judge Wesley, emphasized the requirement of a "direct link in the causal chain" between the defendants' conduct and the plaintiffs' injuries, 96 N.Y.2d 222, 234 (2001). The First Department also relied upon the decisions of the Second Circuit — and seven other circuits — that directed dismissal of similarly remote claims brought under federal and state law against the tobacco companies. 309 A.D.2d at 103-04 & n.3 (citing *Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999), and the D.C., Third, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuit decisions discussed below at pp. 6-7).

As the First Department further stated, "giving a green light" to such nuisance claims would "likely open the courthouse doors to a flood of limitless, similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities." *Id.* at 96. The court warned:

> All a creative mind would need to do is construct a scenario
> describing a known or perceived harm of a sort that can somehow be
> said to relate back to the way a company or an industry makes,
> markets and/or sells its nondefective, lawful product or service, and a
> public nuisance claim would be conceived and a lawsuit born.
>
> — *Id.*

As the court reasoned, without the proximate cause bar, "such lawsuits employed to address a host of societal problems" would ensue, regardless of "remoteness" and the "nature and extent of any intervening causes between defendants' lawful commercial conduct and the alleged harm." *Id.* The proximate cause bar further serves to help prevent courts from becoming enmeshed in "issues which the legislative and executive branches are vastly better designed, equipped and funded to address." *Id.* at 105.

The court thus applied the well-settled rule of law limiting liability *only* to "the *direct and immediate cause* of the damage" and upheld dismissal of the nuisance claims. *Id.* at 97. In doing so, the court contrasted another case in which a nuisance claim was permitted to survive a motion to dismiss, because the defendant's blasting activity "was spatially and temporally proximate" to the damage, with no "subsequent" or "intervening" "other act or event, initiated by any third party" that "caused or contributed to the damage beyond the blasting itself." *Id.* (discussing *N.Y. Trap Rock Corp.* v. *Town of Clarkstown*, 299 N.Y. 77, 80-81 (1949)). That was plainly not the case in *Sturm Ruger*, just as it is not the case here.

Nor is the settled common-law principle barring such remote and indirect claims somehow unique to New York. Rather, as the First Department once again recognized in *Sturm Ruger*, all eight U.S. Courts of Appeals to consider complaints asserting such remote claims against tobacco companies — including the Second Circuit — directed dismissal of all federal and state law claims for lack of proximate cause. *Sturm Ruger*, 309 A.D.2d at 103 n.3. *See*:

(1)    <u>Second Circuit</u> – *Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*, 191 F.3d 229, 235-36, 240 (2d Cir. 1999): "Traditional rules" of proximate cause required dismissal of complaints filed by union health and welfare trust funds; "direct injury is a key element for establishing proximate causation"; proximate cause requires "chain of causation leading to damages [that] is not complicated by the intervening agency of third parties"; "substituting the foreseeability test, in place of finding the existence of a direct injury, is error."

(2)    <u>D.C. Circuit</u> – *Serv. Emps. Int'l Union Health & Welfare Fund* v. *Philip Morris Inc.*, 249 F.3d 1068, 1071-74 (D.C. Cir. 2001): Directing dismissal of complaints brought by three governments and multiple labor-management health trust funds. "The problem for the plaintiffs arises from long-standing common law principles"; the "'tortured path' from the defendants' alleged wrongdoing to the

nations' increased expenditures 'demonstrates that the nations' claims are precisely the type of indirect claims that the proximate cause requirement is intended to weed out.'"

(3)    <u>Third Circuit</u> – *Steamfitters Local Union No. 420 Welfare Fund* v. *Philip Morris, Inc.*, 171 F.3d 912, 930 (3d Cir. 1999): Upholding dismissal due to the "extremely indirect nature of the Funds' injuries," noting the "sheer number of links in the chain of causation that connect [defendants' alleged wrongdoing] to the Funds' increased expenditures."

(4)    <u>Fifth Circuit</u> – *Tex. Carpenters Health Benefit Fund* v. *Philip Morris Inc.*, 199 F.3d 788, 789-90 (5th Cir. 2000): Upholding dismissal of union trust funds' complaint, agreeing with the other circuits that the "loss suffered" was "too remote from the manufacture and sale of cigarettes."

(5)    <u>Seventh Circuit</u> – *Int'l Bhd. of Teamsters* v. *Philip Morris Inc.*, 196 F.3d 818, 821 (7th Cir. 1999): Directing dismissal of suit brought by union pension funds and Blue Cross plans, agreeing with the other circuits that the "loss suffered" by plaintiff was "too remote from the activity of making and promoting cigarettes."

(6)    <u>Eighth Circuit</u> – *Lyons* v. *Philip Morris Inc.*, 225 F.3d 909, 914-15 (8th Cir. 2000): Affirming dismissal of claims brought by trustees of union funds because injury was "indirect," agreeing with the "other circuits."

(7)    <u>Ninth Circuit</u> – Upholding dismissal of all claims, including nuisance claims, brought by political subdivisions of the State of Washington (Hospital Districts) on proximate cause grounds. The "common law 'directness' requirement" demands "a cause which, *in a direct sequence unbroken by any new independent cause*, produces the injury complained of." *Ass'n of Wash. Pub. Hosp. Dists.* v. *Philip Morris Inc.*, 241 F.3d 696, 707 (9th Cir. 2001) (quotation marks omitted). *See also Or. Laborers-Emps. Health & Welfare Tr. Fund* v. *Philip Morris Inc.*, 185 F.3d 957, 963-64 (9th Cir. 1999) (affirming dismissal of complaint brought by six employee health and welfare benefit trust plans; proximate cause not satisfied because there was not a "direct relationship between the injury and the alleged wrongdoing").

(8)    <u>Eleventh Circuit</u> – *United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund* v. *Philip Morris, Inc.*, 223 F.3d 1271, 1274 (11th Cir. 2000): Affirming dismissal; "our sister circuits uniformly have rejected virtually identical claims on proximate cause grounds."

The City's claim here is even further afield than the cases against the gun and tobacco industries. In no sense is ConocoPhillips' conduct the "direct and immediate cause" of the City's claimed harm, as required by *Sturm Ruger*. 309 A.D.2d at 97. Rather, there are numerous links

in the causal chain between the production of oil and plaintiff's claimed injuries, resulting from the independent agency of many third-party actors. The causal chain includes:

1. A company (such as ConocoPhillips' oil and natural gas subsidiaries) explores and produces oil and natural gas.

2. Those products are refined and sold as fuels by others.

3. Numerous third parties make products that require such fuels for their use, and make decisions about how to do so (for example, an auto manufacturer may decide that consumer demand for gas-powered cars will be greater than for electric cars, so it manufactures more of the former; a power company chooses to build a gas-powered plant rather than a nuclear one; and so on).

4. Many hundreds of millions of people or entities in turn decide to use the refined fuel, thereby emitting greenhouse gases (for example, millions of people in the New York City area — or anywhere else in the world, for that matter — decide to drive to work, or take a bus, rather than ride a bicycle or walk).

5. These greenhouse gases combine with other such gases produced by billions of other fuel users around the world, as well as all the greenhouse gases emitted by billions of individuals over the past hundreds of years.

6. The combined effect of all those greenhouse gases in turn results in global warming.

Simply put, production of oil and natural gas — a lawful and heavily regulated activity — is far too remote from the claimed injuries to satisfy the requirement of proximate cause.[3]

Indeed, the City has essentially admitted that the oil and gas companies are *not* the proximate cause. In its own 2004 complaint, the City averred that the "*primary* factor" leading to global warming was the "*emissions* of greenhouse gases." Ex. 1 ¶¶ 147, 158 (emphasis

---

[3] Since 2012, ConocoPhillips' sole subsidiary has been exclusively an exploration and production company, not a fuel refiner. *See* Ex. 4 (2012 10-K Excerpt). Regardless, while exploration and production are more remote than refining, all those activities are far too remote from the City's claimed injuries to satisfy proximate cause. Further, while unnecessary to reach, the City's claims are subject to a three-year statute of limitations — a period during which ConocoPhillips' subsidiary was exclusively an exploration and production company. *See Barklee 94 LLC* v. *Oliver*, 124 A.D.3d 459, 460 (1st Dep't 2015); *City of New York* v. *Coll. Point Sports Ass'n, Inc.*, 61 A.D.3d 33, 49 (2d Dep't 2009); *see also Nat'l R.R. Passenger Corp.* v. *McDonald*, 978 F. Supp. 2d 215, 242 (S.D.N.Y. 2013) (federal law generally applies "analogous limitations statute of the forum state" (quotation marks omitted)), *aff'd*, 779 F.3d 97 (2d Cir. 2015).

added).  It therefore sued the parties who actually emit those gases:  the major electric power companies.  Having failed in that suit, the City is now trying to move not closer in the causal chain, but *further away*:  to reach further back in the causal chain to sue indirect suppliers of the emitters.  It would be as if the plaintiffs in *Laborers Local*, having failed in their claims against the cigarette manufacturers, turned around and sued tobacco *farmers*.  Such claims simply cannot be maintained under well-settled common law principles.[4]

It is no answer to any of this that certain of the parties are alleged to have made statements that the City contends created confusion about global warming.  As a legal matter, the eight federal appellate tobacco decisions make it clear that allegations of misleading the public — which were, of course, fully leveled against the tobacco companies — do not rectify the lack of proximate cause.[5]  But even more fundamentally as to ConocoPhillips, as noted above (p. 3), the amended complaint (like the original) contains just two alleged statements made by ConocoPhillips or its subsidiaries — and it is utterly implausible that either such statement (about the future of Canadian tar sands or ConocoPhillips' responsibility in powering modern life) misled anyone about global warming.  *See Iqbal*, 556 U.S. at 678*.*  To the precise contrary, ConocoPhillips has since 2003 made clear on its website:  "ConocoPhillips recognizes that human activity, including the burning of fossil fuels, is contributing to increased concentrations of greenhouse gases in the atmosphere that can lead to adverse changes in global climate."  Exs. 2, 3.

---

[4] Proximate cause is also required for trespass claims.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 126 (2d Cir. 2013) (dismissing trespass claim on proximate cause grounds).

[5] *See, e.g.*, *Laborers Local*, 191 F.3d at 233 (noting allegations that defendants engaged in "campaign designed to mislead the public" about "dangers [of] smoking"; dismissing due to lack of proximate cause); *Steamfitters*, 171 F.3d at 930 (noting allegations that defendants "engaged in a conspiracy to suppress information"; dismissing for lack of proximate cause, citing the "sheer number of links in the chain of causation" between that conduct and plaintiffs' injury); *Ass'n of Washington Pub. Hosp. Dists.*, 241 F.3d at 700, 707 (noting allegations that defendants "engaged in a half-century conspiracy . . . to misrepresent and to conceal the addictive nature of nicotine and the health risks associated with tobacco use"; dismissing for lack of proximate cause because "common law 'directness' requirement" was not satisfied).

In sum, the requirement of proximate cause applies under both federal and state law. And it is just as plain that the City's claims fail to meet it. Thus, even if one hypothetically assumed that the City here could have a claim under federal or state common law that is not displaced by federal statutory law, it would still fail as a matter of law. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001) ("role [of] a federal court sitting in diversity is not to adopt innovative theories that may distort established law").

## II.    There is no personal jurisdiction over ConocoPhillips.

Dismissal is also independently required because there is no personal jurisdiction over ConocoPhillips. Plaintiff bears the burden of establishing personal jurisdiction. *See MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). To attempt to satisfy that burden on a motion to dismiss, a plaintiff may rely on well-pleaded allegations from the complaint, which "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.* "However, conclusory allegations are not enough to establish personal jurisdiction." *Megna* v. *Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016).

In particular, the plaintiff must satisfy both state law and federal requirements to establish either general jurisdiction or specific jurisdiction. *See Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779 (2017); *Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000). Here, the City cannot establish any form of personal jurisdiction. ConocoPhillips — a Delaware corporation with its principal place of business in Texas — is not "at home" in New York and therefore cannot be subject to general jurisdiction. Further, there is no specific jurisdiction, as all of the allegations concerning ConocoPhillips' connections to New York relate to ConocoPhillips' subsidiaries (former or current) rather than ConocoPhillips itself, and in any event, the City's claims do not "arise out of" any of those alleged activities.

*There is no general jurisdiction.* As the Supreme Court made clear in *Daimler AG* v. *Bauman*, a corporation is subject to a state's general jurisdiction when its "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." 134 S. Ct. 746, 761 (2014) (quotation marks omitted). "[E]xcept in a truly 'exceptional case,'" that

standard is satisfied *only* in the states where the corporation "is incorporated or maintains its principal place of business." *Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

As the City itself alleges, ConocoPhillips is incorporated in Delaware and has its principal place of business in Texas. Am. Complt. ¶ 18. Moreover, the City has alleged no facts suggesting that this is an exceptional case such that ConocoPhillips is nevertheless at home in New York. The City's conclusory allegation that ConocoPhillips "does business in New York State" (Am. Complt. ¶ 31; *see also id.* ¶ 18), even if accepted, would be inadequate. *See Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir. 2014) ("Not every company that regularly 'does business' in New York is 'at home' there."). And while the amended complaint now strains to allege that a predecessor of ConocoPhillips had its headquarters in New York from 1964 to 1972 (Am. Complt. ¶ 31), that says nothing about ConocoPhillips' domicile *now*. *See Ehrenfeld* v. *Bin Mahfouz*, 2006 WL 1096816, at *3 n.3 (S.D.N.Y. Apr. 26, 2006) (noting that "Court may only consider a defendant's contacts with the forum state at the time the lawsuit was filed" and refusing to consider in-state property sold four months before suit was filed), *aff'd sub nom. Ehrenfeld* v. *Mahfouz*, 518 F.3d 102 (2d Cir. 2008). This case was brought by Mayor de Blasio — not Mayor Lindsay.

Indeed, following the principles laid down in *Daimler*, the Second Circuit has found general jurisdiction lacking over defendants even with significant contacts with the forum state. *See Brown*, 814 F.3d at 628 (no general jurisdiction over corporation that was registered to do business in state, with physical presence in state for over three decades, with 30 to 70 workers in state, and $160 million in revenue in state). There is nothing even close to that (insufficient) level of contacts here. Although totally unnecessary to find that the City has failed to meet its burden of establishing personal jurisdiction, ConocoPhillips has virtually no connection to New York. ConocoPhillips is not registered to do business with the Secretary of State of the State of New York. Declaration of Christopher J. Dodson ("Dodson Declaration" or "Dodson Decl.") ¶ 10. It does not have a statutory registered agent for service of process in New York. *Id.* It does not have any officers or employees based in New York. *Id.* ¶ 11. It has no facilities,

operations, or offices in New York; has no telephone or facsimile listings or mailing addresses in New York; and maintains no books or records in New York. *Id.* ¶ 12. ConocoPhillips has no tangible personal or real property in New York; has no sales in New York; and has no New York income. *Id.* ¶ 13. It does not direct any advertising toward New York residents. *Id.* ¶ 14. In short, ConocoPhillips is not "at home" in New York under any conceivable standard.

*There is no specific jurisdiction.* Specific personal jurisdiction exists only where a plaintiff's claim arises out of the defendant's own actions in, or specifically directed into, the forum state. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. The amended complaint alleges only limited contacts between current and former *subsidiaries* of ConocoPhillips and New York, or connections between alleged *predecessors* and New York. Am. Complt. ¶ 31. That is patently insufficient.

As set forth in the Dodson Declaration (at ¶¶ 4-9), each of the alleged "connections" between ConocoPhillips and New York addressed in the amended complaint, if they exist at all, involve ConocoPhillips' subsidiaries (former or current) or alleged predecessors. *See In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *39 (S.D.N.Y. Mar. 28, 2017) ("Courts may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction."). ConocoPhillips is a holding company and does not have any active operations or produce goods or services itself. Dodson Decl. ¶ 3. As the City knows — and as was set forth in ConocoPhillips' motion to dismiss the original complaint, Ex. 5 at 11-14 — the activities of producing, transporting, and marketing fossil fuels are in fact those of a wholly-owned subsidiary (ConocoPhillips Company) or other indirect current (or former) subsidiaries. *See id.* Thus, the City is grasping at straws when it alleges, for example, that ConocoPhillips owned a petroleum product terminal in Riverhead, New York (Am. Complt. ¶ 31), or entered into lease agreements with Exxon for real property in New York (*id.*), or entered into throughput agreements relating to third-party petroleum product terminals in New York (*id.*). All such activities are of current or former *subsidiaries* of ConocoPhillips, not ConocoPhillips itself. Dodson Decl. ¶¶ 4-9.

These corporate distinctions matter because New York law is clear that a subsidiary's contacts may be attributed to a parent company for purposes of specific jurisdiction in only two circumstances, neither of which the City can establish: "'the subsidiary must be either an "agent" or "mere department" of the foreign parent.'" *LPD N.Y., LLC* v. *Adidas Am., Inc.*, 2017 WL 1162181, at *16 (E.D.N.Y. Mar. 27, 2017) (quoting *Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998)); *see also Nypl* v. *JPMorgan Chase & Co.*, 2018 WL 1472506, at *7 (S.D.N.Y. Mar. 22, 2018) (dismissing parent companies for lack of personal jurisdiction where plaintiffs failed to "provide sufficient facts or argument in support of a veil-piercing or alter ego analysis").

In determining whether a subsidiary is a "mere department," courts consider (1) "common ownership" between the parent and the subsidiary; (2) the "financial dependency of the subsidiary on the parent corporation"; (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Am. Lecithin Co.* v. *Rebmann*, 2017 WL 4402535, at *6 (S.D.N.Y. Sept. 30, 2017). The first factor — common ownership — is a necessary, but not sufficient, condition. *Id.*

Even after ConocoPhillips pointed out this issue in its motion to dismiss the original complaint, the City has not alleged any facts to meet these factors. The City's conclusory allegations that all defendants control all of their subsidiaries, *see* Am. Complt. ¶¶ 21-23, are (still) not a substitute for well-pleaded facts. *See Jazini*, 148 F.3d at 185 (rejecting conclusory allegations of control and dependency as "but a restatement of two of the factors to be considered"). And the facts are to the contrary. ConocoPhillips' sole direct subsidiary is separately capitalized, with its own assets, cash flows, and income, and with its own bank accounts. Dodson Decl. ¶ 15. Moreover, ConocoPhillips' sole direct subsidiary has its own officer structures and its own governance structures to appoint its officers, and the same is true for all indirect subsidiaries except those without officers (e.g., member-managed LLCs). *Id.* ¶ 16. There

is no basis to conclude that ConocoPhillips' subsidiaries are financially dependent on it or that it exercises any control over its subsidiaries beyond the normal parent-subsidiary relationship.

Nor has the City established that ConocoPhillips' subsidiaries act as its "agents" in New York. "For purposes of personal jurisdiction, an agent is a person or entity that acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises 'some control.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA.* v. *BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 360 (S.D.N.Y. 2004) (quotation marks and citations omitted). The relationship must go beyond the normal parent-subsidiary relationship, however, as "[m]ere ownership by a parent company of a subsidiary that is subject to personal jurisdiction is insufficient to establish jurisdiction over the parent." *Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*, 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998); *Richbell Info. Servs., Inc.* v. *Jupiter Partners, L.P.*, 309 A.D.2d 288, 308 (1st Dep't 2003) ("[A] showing of agency for jurisdictional purposes will not be inferred from the mere existence of a parent-subsidiary relationship.").

Once again, while the City includes conclusory allegations of agency and control, it has alleged no *facts* to support a finding of agency. *See Gurvey* v. *Cowan, Liebowitz & Latman, PC*, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009) (rejecting conclusory allegations of agency). And again, the actual facts are to the contrary. As noted, ConocoPhillips is a holding company and does not have any active operations or produce goods or services itself. Dodson Decl. ¶ 3. New York courts have recognized that the subsidiaries of holding companies do not generally act as agents of their parents. *See Gurvey*, 2009 WL 691056, at *4 ("Where a holding company is nothing more than an investment mechanism — a device for diversifying risk through corporate acquisitions — the subsidiaries conduct business not as its agents but as its investments." (quotation marks omitted)); *In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 492 (S.D.N.Y. 2013) (no jurisdiction over "typical holding company" that "diversifies risk in the volatile oil and gas market by holding an ownership stake in companies operating in various sectors of the global market"). In keeping with that structure, ConocoPhillips follows all corporate formalities and respects the corporate separateness of its direct and indirect subsidiaries, including with respect

to officer selection and corporate governance. Dodson Decl. ¶ 16. *See FIMBank P.L.C.* v. *Woori Fin. Holdings Co.*, 104 A.D.3d 602, 603 (1st Dep't 2013) (no jurisdiction over holding company that "does not control [subsidiary's] finances, interfere with the selection and assignment of executive personnel or fail to observe the corporate formalities"); *see also Nypl*, 2018 WL 1472506, at *6-7 (rejecting personal jurisdiction over holding companies where complaint alleges conduct by subsidiaries only).

In addition, to the extent the City attempts to rely on contacts between alleged "predecessors" of ConocoPhillips and New York, that attempt fails. New York law allows a successor corporation to inherit its predecessor's jurisdictional status only in certain, limited circumstances. *See Semenetz* v. *Sherling & Walden, Inc.*, 21 A.D.3d 1138, 1140–41 (3d Dep't 2005), *aff'd*, 7 N.Y.3d 194 (2006); *see also In re N.Y.C. Asbestos Litig.*, 112 A.D.3d 529, 530 (1st Dep't 2013). Specifically, a plaintiff must demonstrate that (1) the alleged successor expressly or impliedly assumed the alleged predecessor's tort liability, (2) there was a consolidation or merger between the entities, (3) the alleged successor is a "mere continuation" of the alleged predecessor, or (4) the transaction was entered into fraudulently to escape liability. *Schumacher* v. *Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983); *see also Societe Generale* v. *Fla. Health Scis. Ctr., Inc.*, 2003 WL 22852656, at *4 (S.D.N.Y. Dec. 1, 2003).

Aside from insufficient assertions that certain entities were "predecessors" of ConocoPhillips, the City has made no effort to allege facts to meet its burden on this issue. *See Am. Lecithin Co.*, 2017 WL 4402535, at *9 (rejecting conclusory allegations of predecessor-successor relationship). In fact, Continental Oil & Transportation Company, the first alleged predecessor — after a long chain of transactions and name changes — merged with ConocoPhillips Company (ConocoPhillips' subsidiary) in 2002. Dodson Decl. ¶ 17. Similarly, Tosco Corporation, the other alleged predecessor, which had been acquired by Phillips Petroleum Company in 2001, merged with ConocoPhillips Company in 2003. *Id.* ¶ 18. Thus, these two companies at most could have been predecessors of a ConocoPhillips *subsidiary* (ConocoPhillips Company) — not ConocoPhillips itself.

And in any event, even if, contrary to law, ConocoPhillips could be ascribed the contacts of its alleged predecessors or its subsidiaries, personal jurisdiction would still be lacking. The City must establish that its global warming claims "arise out of" ConocoPhillips' alleged contacts with New York, as required by the Supreme Court in *Bristol-Myers Squibb* and the Second Circuit in *Chew* v. *Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998). *See also* Memorandum of Law in Support of Exxon Mobil Corporation's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction 12-17. The sundry grab-bag of activities alleged by the City (Am. Complt. ¶ 31), such as producing oil in North Dakota that gets shipped through Albany, or producing fuel outside New York that finds its way here, or leasing property in New York that (in some unspecific way) relates to "marketing and sale," do not remotely suffice. Simply put, the amended complaint remains bereft of *any* allegation that the City's claimed injuries would not have taken place absent ConocoPhillips' various claimed New York activities, much less a plausible one.

Thus, the City has not met its burden to establish personal jurisdiction over ConocoPhillips. Dismissal is required for this reason as well.

## CONCLUSION

For the foregoing reasons, ConocoPhillips' motion to dismiss should be granted.

Dated: March 30, 2018
New York, New York

Respectfully submitted,

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

John F. Savarese
Jeffrey M. Wintner
Ben M. Germana
Jonathan Siegel

51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  JFSavarese@wlrk.com


Tracie J. Renfroe
Carol M. Wood
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, Texas  77002
Telephone:  (713) 751-3200
Facsimile:  (713) 751-3290
Email:  trenfroe@kslaw.com
Email:  cwood@kslaw.com

*Attorneys for Defendant ConocoPhillips*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CITY OF NEW YORK,

                Plaintiff,

    v.

BP P.L.C.; CHEVRON CORPORATION;
CONOCOPHILLIPS; EXXON MOBIL CORPORATION;
and ROYAL DUTCH SHELL PLC,

                Defendants.

Case No. 18 Civ. 182 (JFK)

## AFFIRMATION OF SERVICE

    I, Jonathan Siegel, declare under penalty of perjury that I caused a copy of

ConocoPhillips' Notice of Motion to Dismiss dated March 30, 2018, ConocoPhillips'

Memorandum of Law Addressing Individual Issues in Support of its Motion to Dismiss

Plaintiff's Amended Complaint dated March 30, 2018, the Declaration of Christopher J. Dodson

in Support of ConocoPhillips' Motion to Dismiss Plaintiff's Amended Complaint for Lack of

Personal Jurisdiction dated March 29, 2018, and the Declaration of Jonathan Siegel in Support of

ConocoPhillips' Motion to Dismiss Plaintiff's Amended Complaint dated March 30, 2018 to be

served upon on the parties listed on **Exhibit A** by email on March 30, 2018.

Dated: March 30, 2018

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

Jonathan Siegel
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Fax: (212) 403-2000
Email: JRSiegel@wlrk.com

*Attorneys for ConocoPhillips*

## Exhibit A

Susan E. Amron
New York City Law Dep't
Office of the Corporation Counsel
100 Church Street
New York, NY 10007
Telephone:  212-788-1578
Email:  samron@law.nyc.gov

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1918 8th Avenue
Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Email:  steve@hbsslaw.com

Matthew F. Pawa
Hagens Berman Sobol Shapiro LLP
1280 Centre Street, Suite 230
Newton Centre, Massachusetts  02459
Telephone:  (617) 641-9550
Email:  mattp@hbsslaw.com

*Counsel to the City of New York*

Philip H. Curtis
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York  10019
Telephone:  (212) 836-7199
Email:  philip.curtis@arnoldporter.com

*Counsel to BP P.L.C.*

Anne Champion
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 351-5361
Email:  achampion@gibsondunn.com

*Counsel to Chevron Corporation*

Jaren Janghorbani
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3211
Email:  jjanghorbani@paulweiss.com

*Counsel to Exxon Mobil Corporation*

Daniel P. Collins
Munger, Tolles & Olson LLP
350 South Grand Avenue
Los Angeles, California  90071
Telephone:  (213) 683-9125
Email:  daniel.collins@mto.com

*Counsel to Royal Dutch Shell PLC*