UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF NEW YORK,

                              Plaintiff,

              v.                                    Case No. 18-cv-182-JFK

BP P.L.C.; CHEVRON CORPORATION;
CONOCOPHILLIPS; EXXON MOBIL
CORPORATION; and ROYAL DUTCH
SHELL PLC,

                              Defendants.

## PLAINTIFF THE CITY OF NEW YORK'S OPPOSITION TO CONOCOPHILLIPS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ......................................................................................................... 2

    A.  The City has properly brought this case against producers of fossil
        fuels. ..................................................................................................................... 2

    B.  The City properly alleges proximate cause. ........................................................... 4

        1.  Basic tort law holds multiple contributors liable for an
            indivisible harm and for the foreseeable acts of third
            parties. ...................................................................................................... 5

        2.  Under these basic tort rules, defendants can be held liable
            for producing fossil fuels foreseeably burned by consumers
            and thereby causing climate change. ........................................................ 8

        3.  The gun cases on which ConocoPhillips relies to argue that
            the intervening acts of consumers should defeat causation
            here are completely inapposite. .................................................................. 9

        4.  ConocoPhillips' reliance on lawsuits against tobacco
            companies by union funds is also misplaced. .......................................... 11

        5.  ConocoPhillips' other arguments lack merit as well. ............................. 12

III.  CONCLUSION .................................................................................................... 14

010694-13 1029116 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbatiello v. Monsanto Co.*,
   522 F. Supp. 2d 524 (S.D.N.Y. 2007)................................................6, 9

*Bell v. Bd. of Educ.*,
   90 N.Y.2d 944 (1997) ................................................14

*Boim v. Holy Land Found. for Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008) ................................................6

*Boomer v. Atl. Cement*,
   26 N.Y.2d 219 (1970) ................................................9

*Caso v. Dist. Council 37, AFSCME*,
   43 A.D.2d 159 (2d Dep't 1973) ................................................7

*City of New York v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) ................................................10

*City of New York v. Milhelm Attea & Bros., Inc.*,
   550 F. Supp. 2d 332 (E.D.N.Y. 2008) ................................................9

*City of Rochester v. Premises Located at 10-20 S. Washington St.*,
   180 Misc. 2d 17 (N.Y. Sup. Ct. 1998) ................................................7

*Clawson v. Cent. Hudson Gas & Elec. Corp.*,
   298 N.Y. 291 (1948) ................................................9

*Connecticut v. Am. Elec. Power Corp.*,
   564 U.S. 410 (2011) (*AEP*)................................................2

*Connecticut v. Am. Elec. Power Corp.*,
   582 F.3d 309 (2d Cir. 2009), *aff'd in rel. part, rev'd on other grounds*, 564
   U.S. 410 (2011)................................................6, 7

*Copart Indus., Inc. v. Consol. Edison Co.*,
   41 N.Y.2d 564 (1977) ................................................11, 12

*Cox v. City of Dallas*,
   256 F.3d 281 (5th Cir. 2001) ................................................5

*Derdiarian v. Felix Contracting Corp.*,
   51 N.Y.2d 308 (1980) ................................................7, 14

*Hamilton v. Beretta U.S.A. Corp.*,
    96 N.Y.2d 222 (2001) ..........................................................................5, 9, 10, 13

*Higazy v. Templeton*,
    505 F.3d 161 (2d Cir. 2007)...............................................................................7

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) .........................................................................10

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999)..............................................................................11

*Mason v. U.E.S.S. Leasing Corp.*,
    96 N.Y.2d 875 (2001) ......................................................................................14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013).......................................................................... *passim*

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    75 F. Supp. 2d 593 (S.D.N.Y. 2011).................................................................6

*NAACP v. AcuSport, Inc.*,
    271 F. Supp.2d 435 (E.D.N.Y. 2003) ..............................................................10

*New York Trap Rock Corp. v. Clarkstown*,
    299 N.Y. 77 (1949) ..........................................................................................12

*People v. Sturm, Ruger & Co.*,
    309 A.D.2d 91 (1st Dep't 2003) ..............................................................9, 10, 14

*Sahu v. Union Carbide Corp.*,
    2014 WL 3765556 (S.D.N.Y. July 30, 2014) .............................................2, 5, 11

*Shaw's Jewelry Shop, Inc. v. New York Herald Co.*,
    170 A.D. 504 (1st Dep't 1915) ..........................................................................7

*State v. Fermenta ASC Corp.*,
    238 A.D.2d 400 (2d Dep't 1997) ...................................................................7, 8, 9

*State v. Schenectady Chems., Inc.*,
    117 Misc.2d 960 (N.Y. Sup. Ct. 1983), *aff'd as modified*, 103 A.D.2d 33 (3d
    Dep't 1984) .........................................................................................................8

*Warren v. Parkhurst*,
    Misc. 466 (N.Y. Sup. Ct. 1904), *aff'd*, 105 A.D. 239 (3d Dep't 1905), *aff'd*,
    186 N.Y. 45 (1906) ........................................................................................5, 6

*Williams v. Dow Chem. Co.*,
    2004 WL 1348932 (S.D.N.Y. June 16, 2004) .......................................................8

**OTHER AUTHORITIES**

1 Dan B. Dobbs, THE LAW OF TORTS § 208 (2d ed. 2011) ............................12

W. Page Keeton, *et al.*, PROSSER & KEETON ON THE LAW OF TORTS § 52 (5th ed.
    1984) ....................................................................................................................6

*Restatement (Second) of Torts* § 433 (1979) .............................................................12

*Restatement (Second) of Torts* § 442A (1979) ...........................................................7

*Restatement (Second) of Torts* § 443 (1979) .............................................................7

*Restatement (Second) of Torts* § 834 (1979) ..........................................................6, 7

*Restatement (Second) of Torts* § 840E (1979) ........................................................5, 6

*Restatement (Second) of Torts* § 881 (1979) .............................................................6

*Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 36
    (2005) ...................................................................................................................6

Plaintiff the City of New York (City) opposes the motion to dismiss the amended complaint (AC) by ConocoPhillips.

## I. INTRODUCTION

The City has brought claims against ConocoPhillips and other defendants because they are among the top contributors in the world to climate change through their production, promotion, and sale of fossil fuels.

ConocoPhillips is no innocent party. It was at all relevant times a member of the American Petroleum Institute ("API"). The API was not only warned by a task force consultant in 1980 that continued fossil fuel use would likely produce "globally catastrophic effects," it engaged in a campaign of deception on climate change for its members that continued throughout much of the 2000s.

Contrary to ConocoPhillips' argument, there is nothing inconsistent between this suit to obtain compensation from *producers* of fossil fuels and the City's previous lawsuit seeking injunctive relief against the largest *emitters* of greenhouse gases. The City's previous lawsuit plainly stated that fossil fuels generally, not just coal-fired power plants, are the cause of global warming and sought emissions caps on the largest emitters in order to reduce the future risk from global warming. That is no more inconsistent than a lawsuit seeking to enjoin gasoline leaks from an underground storage tank would be inconsistent with a subsequent suit seeking damages from the company sued as a supplier of gasoline who knew that its product would escape into the environment with harmful consequences.

Nor is there any defect in the City's allegations of proximate cause. Consumers' burning of fossil fuels is an entirely foreseeable use of defendants' products. Indeed, it is their intended and virtually universal use. This case is thus quite unlike the cases against gun manufacturers that ConocoPhillips invokes; those cases involved criminal misuse of the products by a small

subset of product users. Nor does this case suffer from the "wrong plaintiff" defect of the labor union pension fund cases brought against tobacco companies that ConocoPhillips cites; those cases all involved a plaintiff trying to sue for harm that was derivative of harm to a third party. Here the City sues for injuries it has suffered itself and, as permitted by New York State public nuisance law, for the protection of the health and safety of its citizens.

ConocoPhillips' motion to dismiss should be denied.

## II. ARGUMENT

### A. The City has properly brought this case against producers of fossil fuels.

The City properly focuses this case on the corporations that are at the root of global warming pollution: the fossil fuel producers. Contrary to ConocoPhillips' argument, it is of no consequence here that the City previously brought a global warming tort case seeking an injunction against coal-fired power plants. *See Connecticut v. Am. Elec. Power Corp.*, 564 U.S. 410 (2011) (*AEP*). The cases are perfectly consistent—the likely reason that ConocoPhillips' codefendants have not joined in this argument.

First, there is nothing inconsistent in the two kinds of cases, *i.e.*, direct emitter and product producer cases. The Second Circuit has expressly held that, under New York law of nuisance and trespass, a defendant producing a product may be held liable when it knows that its product will escape into the environment with harmful consequences. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 120-21 (2d Cir. 2013) (*MTBE*); *Sahu v. Union Carbide Corp.*, 2014 WL 3765556, at *8 (S.D.N.Y. July 30, 2014) (discussing *MTBE:* "Exxon knew" that gasoline would be stored in leaky tanks and would escape into the environment). By ConocoPhillips' logic, the City should have been limited in *MTBE* to a remedy against the gas station owners who released the gasoline additive into the groundwater. Instead, the Second Circuit affirmed the $100 million judgment against Exxon "as a supplier of gasoline." 725 F.3d

at 133.  According to ConocoPhillips, if the City had previously attempted to obtain an injunction against the gas station owners to stop or slow the releases, it somehow would have been improper subsequently to seek damages from the producers of MTBE-containing gasoline such as Exxon.  This makes no sense.

Second, while the *AEP* complaint was brought against coal-fired power plants, it alleged that "fossil fuel combustion" generally (*i.e.* coal, oil, and natural gas), not just coal combustion, is the primary cause of climate change.[1]  It did not suggest that oil and natural gas—produced by defendants—could not also be liable for climate change injuries.  Indeed, ConocoPhillips' own trade association, the API, filed an *amicus* brief in *AEP* stating that its members "would be the target of future nuisance suits" under the theory of *AEP*.[2]

Third, the *AEP* plaintiffs sought injunctive relief—an emissions cap—against the largest emitters of greenhouse gases in order to reduce future injuries to the City and other plaintiffs. The defendants here were not then, and are not now, among the top *emitters* of greenhouse gasses, and thus *AEP* quite sensibly did not name them as defendants.  Defendants have contributed to climate change through the production, sale, and promotion of fossil fuels, which accounts for 90 percent of their "carbon footprint." AC ¶ 3.  While this case asks the defendants to pay for harm to which they have contributed (and from which they have profited) more than anyone else, a case seeking an emissions cap would not sensibly have included them.

Finally, since *AEP* was litigated there is new evidence of two kinds, both of which point toward defendants as the proper parties in this case.  First, there is evidence from the scientific, peer-reviewed literature demonstrating that the amount of carbon dioxide and methane in the

---

[1] Complaint in *AEP*, No. 04-Civ.-5669 (LAP) (S.D.N.Y), ECF No. 1  at ¶ 79 ("There is a clear scientific consensus that global warming has begun and that most of the current global warming is caused by emissions of greenhouse gases, primarily carbon dioxide from fossil fuel combustion.").

[2] Brief for *Amici Curiae* The Alliance of Automobile Manufacturers, *et al.*, No. 05-5104-cv (2d Cir.), at 5.

atmosphere from major fossil fuel producers can be calculated and attributed to each such company.  AC ¶ 3 (citing Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers, 1854–2010*, CLIMATIC CHANGE, Jan. 2014). Defendants here are the five largest, shareholder-owned companies on this list of "Carbon Majors" and their contributions have been individually calculated.  AC ¶¶ 3, 76.  Together those contributions from production of fossil fuels account for over 11% of all the carbon dioxide and methane pollution in the atmosphere from industrial sources.  Most of this production has occurred since 1980, by which time defendants knew that their products were contributing to the greenhouse effect, with potentially "catastrophic" harms.  *Id.* ¶¶ 76, 80.

There is also new evidence demonstrating that the petroleum companies knew about the climate change problem decades ago, including evidence of an industry task force that received a scientific warning that global warming would cause "globally catastrophic effects" and found that reductions in fossil fuel use would result in the "immediate problem being considerably eased."  *Id.* ¶ 82.  The API participated in this task force, and defendants here, including ConocoPhillips, at all relevant times have been members of the API.  *Id.* ¶¶ 4, 16-20, 80-83.  But instead of heeding those warnings, defendants engaged in a multi-decade campaign of climate change confusion and denial, including through the API.  *Id.* ¶¶ 95-97, 104, 106.

In short, *AEP* was a different kind of case, and the City's injunctive claim in *AEP* is perfectly consistent with the claims the City makes here.

## B.      The City properly alleges proximate cause.

The amended complaint alleges that defendants have contributed to global warming by producing and selling fossil fuels in massive quantities and by misleading the public about the climate impacts of these products, despite defendants' longstanding internal knowledge of "catastrophic" harms.  *Id.* ¶ 82(c).  ConocoPhillips is incorrect that the City's causation

- 4 -

allegations are insufficient as a matter of law:  normal and foreseeable acts by third parties—such as the spills by gas station operators in the City's MTBE lawsuit against Exxon and the burning of fossil fuels here—do not break the chain of causation, especially when the defendant knows that its product will escape into the environment with harmful consequences.  *MTBE*, 725 F.3d at 120-21; *Sahu*, 2014 WL 3765556, at *8.  Knowledge, deception, promotion, production: all of these factors point toward defendants, not ordinary fossil fuel users, as the actors "in the best position to protect against the risk of harm" that climate change poses to the City.  *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233 (2001).  The City has properly alleged proximate cause.

1.      **Basic tort law holds multiple contributors liable for an indivisible harm and for the foreseeable acts of third parties.**

Basic tort liability rules establish that where there are multiple contributors to an indivisible harm—even a very large number of contributors—each may be held liable.  So in a multiple polluter case sounding in public nuisance, the court need not trace molecules back to defendants.  Rather, public nuisance liability for pollution attaches to a defendant that "contributes" to the nuisance.  *See, e.g.*, *Cox v. City of Dallas*, 256 F.3d 281, 292 n.19 (5th Cir. 2001) ("[N]uisance liability at common law has been based on actions which 'contribute' to the creation of a nuisance").  As the *Restatement* provides, "the fact that other persons contribute to a nuisance is not a bar to the defendant's liability for his own contribution."  *Restatement (Second) of Torts* § 840E (1979) (*Restatement*); *id.* cmt. b ("It may, for example, be unreasonable to pollute a stream to only a slight extent, harmless in itself, when the defendant knows that pollution by others is approaching or has reached the point where it causes or threatens serious interference with the rights of those who use the water.").

This section of the *Restatement* is consistent with New York law, and in fact is partially based on a New York case, *Warren v. Parkhurst*, where more than two dozen mill owners were found liable for polluting a stream, even though each individual contribution was insufficient to cause harm. 45 Misc. 466 (N.Y. Sup. Ct. 1904), *aff'd*, 105 A.D. 239 (3d Dep't 1905), *aff'd*, 186 N.Y. 45 (1906); *see also Restatement* § 840E, Reporter's Note (relying on *Warren*); W. Page Keeton, *et al.*, Prosser & Keeton § 52 (5th ed. 1984) ("acts which individually would be innocent may be tortious if they thus combine to cause damage"). As Judge Posner, writing for the *en banc* Seventh Circuit, summarized the law:

> The single act itself becomes wrongful because it is done in the context of what others are doing." Keeton et al., supra, § 52 . . . If "each [defendant] bears a like relationship to the event" and "each seeks to escape liability for a reason that, if recognized, would likewise protect each other defendant in the group, thus leaving the plaintiff without a remedy," the attempt at escape fails; each is liable. *Id.*, § 41.

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 696-97 (7th Cir. 2008) (*en banc*); *accord Restatement* § 881 cmt. d ("It is also immaterial that the act of one of them by itself would not constitute a tort if the actor knows or should know of the contributing acts of the others."). [3]

Thus, "'[e]veryone who creates a nuisance or participates in the creation or maintenance thereof is liable for it.'" *MTBE*, 725 F.3d at 121 (quoting *Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp.*, 86 A.D.2d 826, 828 (1st Dep't 1982)). This is essentially identical to the *Restatement* rule, which provides that a defendant is liable "for a nuisance caused

---

[3] By the same token, tort law is capable of separating major industrial contributors to global warming from trivial contributors. *See, e.g.*, *Restatement (Third) of Torts: Liability for Physical & Emotional Harm* § 36 (2005) ("When an actor's negligent conduct constitutes only a trivial contribution to a causal set that is a factual cause of harm" there is no liability.).

by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on."  *See Restatement* § 834.[4]

Further, the New York Court of Appeals has held that causation can be traced back to the defendant where the harm occurs as a result of "normal" or "foreseeable" acts by third parties: "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed.  In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence."  *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980). This is consistent with the *Restatement*, which provides that foreseeable events, such as the spills by the gas station operators in *MTBE*, or the loud noises created by a nightclub's inebriated patrons after they leave, do not break the causal chain.  *Id.* § 834 cmts. d & f; *id.* §§ 443, 442A; *see also City of Rochester v. Premises Located at 10-20 S. Washington St.*, 180 Misc. 2d 17, 21 (N.Y. Sup. Ct. 1998) (nightclub case, citing *Restatement*).[5]

Trespass is similar.  The defendant must "intend the act which … produces the unlawful invasion, and the intrusion must at least be the immediate *or inevitable* consequence of what he willfully does."  *MTBE*, 725 F.3d at 119 (quotation marks omitted) (emphasis added).  As with nuisance, this principle has been applied to hold manufacturers liable for trespasses caused by

---

[4] *See also MTBE*, 725 F.3d at 121 (relying on *Restatement* § 834 to analyze New York law); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007) (same); *In re MTBE Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 628 (S.D.N.Y. 2001) (same, MTBE case by private parties); *cf. Connecticut v. Am. Elec. Power Corp.*, 582 F.3d 309, 352 (2d Cir. 2009) (relying on *Restatement* to evaluate federal common law claim), *aff'd in rel. part, rev'd on other grounds*, 564 U.S. 410 (2011).

[5] *Accord Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) ("it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision") (quotation marks omitted); *Shaw's Jewelry Shop, Inc. v. New York Herald Co.*, 170 A.D. 504, 507-08 (1st Dep't 1915) (where crowds on the street were the immediate cause of the nuisance, the newspaper that attracted these crowds via post of baseball scores was nonetheless a proximate cause of the nuisance); *Caso v. Dist. Council 37, AFSCME*, 43 A.D.2d 159, 163 (2d Dep't 1973) (nuisance was "appropriate remedy" in action against union for strike by municipal workers which ultimately caused New York City to release untreated sewage, which ended up on plaintiff's beaches).

products that the manufacturer knows are likely to cause harm only after use by third parties.

*See id.* at 120; *State v. Fermenta ASC Corp.*, 238 A.D.2d 400, 404 (2d Dep't 1997) (sustaining

liability of pesticide producer who directed consumers to apply pesticide to soil).

2. **Under these basic tort rules, defendants can be held liable for producing fossil fuels foreseeably burned by consumers and thereby causing climate change.**

Application of these basic rules shows that the City has properly alleged proximate cause.

The top 90 fossil fuel producers are responsible for 63% of cumulative worldwide emissions of

industrial carbon dioxide and methane. AC ¶ 3. Defendants' production alone is responsible for

more than 11% of emissions. *Id.* Burning these fuels has inevitably caused—by operation of

scientific principles that defendants understood earlier and better than most anyone else—climate

impacts that defendants knew presented a risk of "catastrophic" harm of the very kind that New

York is now experiencing. *Id.* ¶¶ 4, 82(c). And defendants encouraged this mass consumption

by sponsoring an enormous campaign of climate change confusion and denial, either directly or

through the API, aimed at the consuming public, and by promoting fossil fuels as a "responsible"

global energy source. *Id.* ¶¶ 6, 98, 103(e). Thus, there is at least a question of fact whether

defendants "participate[d] in the creation or maintenance" of a nuisance, and also whether a

trespass (from seawater and flood waters) was the "inevitable" consequence of their conduct.

Moreover, defendants are not absolved merely because someone else actually burned the

fossil fuels: this use was "normal" and "foreseeable." Indeed, it was something defendants

encouraged. So there is no break in the causal chain—just as third-party involvement in spills

did not absolve Exxon in *MTBE*; the activity of all the other polluters did not absolve the mill

owner in *Warren v. Parkhurst*; and the inebriated patrons did not absolve the nightclub in *City of

Rochester*. *Restatement* §§ 442A, 443, 840E. Other cases have held product manufacturers

liable when they knew their products would cause environmental harm,[6] and lawful activities are

often adjudged to be nuisances. *See, e.g.*, *Boomer v. Atl. Cement*, 26 N.Y.2d 219 (1970) (a

factory operated lawfully and as designed, but polluted nearby land); *Clawson v. Cent. Hudson

Gas & Elec. Corp.*, 298 N.Y. 291 (1948) (government approval does not immunize dam from

public nuisance liability). The same is true where a product is used exactly as intended or

expected. *MTBE*, 725 F.3d at 120-21 (holding the migration of a gasoline additive into public

water supplies constituted a public nuisance where "supplier of gasoline" knew it would escape);

*City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 351 (E.D.N.Y. 2008)

(nuisance suit against tobacco manufacturers survived motion to dismiss).

**3.      The gun cases on which ConocoPhillips relies to argue that the intervening
          acts of consumers should defeat causation here are completely inapposite.**

Defendants wrongly contend that two gun cases hold that causation exists only if the

defendant's conduct creates the harm "directly," without intervening acts by third parties. CP

Br. 6, *see also* Br. 27. Neither *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222 (2001), nor

*People v. Sturm, Ruger & Co.*, 309 A.D.2d 91 (1st Dep't 2003), goes nearly this far.

In *Hamilton*, a negligence case, the court found that the defendant gun manufacturers did

not owe a duty to the plaintiff gun shooting victims to market their guns in a non-negligent

manner, because the trial evidence failed to show that the defendants' marketing practices were

linked (a) to the particular shootings that injured the plaintiffs, or (b) to criminal shootings in

general. 96 N.Y.2d at 230, 236. The court did *not* hold that product manufacturers can never be

liable for injuries caused by third-party use of their product. On the contrary, *Hamilton*

---

[6] *See Williams v. Dow Chem. Co.*, 2004 WL 1348932, at *19-21 (S.D.N.Y. June 16, 2004) (denying summary judgment in public nuisance claim against pesticide manufacturer); *State v. Schenectady Chems., Inc.*, 117 Misc.2d 960, 966 (N.Y. Sup. Ct. 1983) (nuisance liability for chemical manufacturer), *aff'd as modified*, 103 A.D.2d 33 (3d Dep't 1984) (noting that producer may have improperly entrusted chemicals to third party for disposal); *Fermenta*, 238 A.D.2d at 404 (trespass liability where chemical producer advised third parties to apply chemical to soil); *Abbatiello*, 522 F. Supp. 2d at 541 (nuisance liability PCB manufacturer).

recognized that "a manufacturer may be held liable for complicity in dangerous … activity," *id.* at 235, and held open the possibility that such complicity by the gun companies could be proven in the future, by showing that their conduct was a "direct link in the causal chain that resulted in plaintiffs' injuries." *Id.* at 234, 242. This prediction came to pass—later decisions against gun companies denied motions to dismiss under the proximate cause law of New York and other states.[7]

In *Sturm, Ruger & Co.*, the court considered another attempt to hold gun companies liable for gun crimes. Relying on the factual finding in *Hamilton* that gun marketing practices do not cause gun crimes, the court saw "it as inappropriate . . . to sustain this complaint." 309 A.D.2d at 101. As defendants recite, the court went on to point out that illegal gun violence was "too remote" from the gun companies' gun sales, and was instead "caused directly and principally by the criminal activity of intervening third parties," over whom defendants "have absolutely no control." *Id.* at 99, 103-04 (quotation marks omitted). But the court never said direct and immediate harm was required. Instead, the court explicitly *rejected* the idea "that a common-law public nuisance claim is always an inappropriate legal tool to address consequential harm from all forms of commercial activity." *Id.* at 97. The court cited with approval some well-known cases where the injury was, notwithstanding intervening acts by third parties, "inextricably intertwined with defendant's commercial activity." These included *City of Rochester*, where a nightclub was liable for a nuisance precipitated by its drunk patrons outside the club, as well as *Fermenta* and *Schenectady Chemicals*, where chemical companies were liable for contamination even though their product was released by others. *Id.* at 98 & n.2.

---

[7] *See, e.g., City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 284 (E.D.N.Y. 2004); *NAACP v. AcuSport, Inc.*, 271 F. Supp.2d 435, 493-95 (E.D.N.Y. 2003); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1207 n.20 (9th Cir. 2003) (applying California law and *Restatement* principles).

The consumer fossil fuel use here is completely different from the intervening criminal acts in the gun cases.  As noted above, the burning of fossil fuels for energy is the normal, expected, and intended use of defendants' product.  AC ¶ 1.  So the basic tort rule is applicable: the causal chain is not broken by third-party acts that are the normal and foreseeable consequence of a defendant's conduct.  Thus, this case is like *MTBE* and the nightclub and chemical manufacturer cases discussed above (*e.g.*, *City of Rochester*, *Schenectady Chemicals*, and *Fermenta*), which are cited favorably in *Sturm, Ruger*, but notably absent from defendants' briefs.[8]

### 4. ConocoPhillips' reliance on lawsuits against tobacco companies by union funds is also misplaced.

ConocoPhillips also relies on various inapposite lawsuits against tobacco companies by union funds.  CP Br. 6-7.  But all of these cases involved a plaintiff medical benefits provider who suffered *derivative* financial loss as a result of an injury to third-party smokers.  Conoco-Phillips says these cases require a "direct injury," CP Br. 6, implying that the injury must be inflicted directly by the defendant's act, without any intervening harmful acts by third parties (such as fossil fuel users).  But the actual holding of these cases is that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts is generally said to stand at too remote a distance to recover."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999); *see also id.* 238-39 ("the critical question posed by the direct injury test is whether the damages a plaintiff sustains are derivative of an injury to a third party.  If so, then the injury is indirect; if not, it is direct.") (emphasis added).

---

[8] *See also MTBE*, 725 F.3d at 120 (*Fermenta* is "squarely on point"); *Sahu*, 2014 WL 3765556, at *6 (citing *Schenectady Chemicals* with approval).

Here the City's injuries include damage to the City's own property, as well as harm to public rights that the City is specially authorized by law to defend. AC ¶¶ 2, 144; *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 568 (1977); *New York Trap Rock Corp. v. Clarkstown*, 299 N.Y. 77, 83-84 (1949) (municipality may bring public nuisance claim to protect public health and safety). The City's claim is not derivative of injuries to other people, so defendants' cases are not on point.

**5.  ConocoPhillips' other arguments lack merit as well.**

ConocoPhillips' argument on spatial and temporal proximity should be rejected. To begin with, defendants' harmful conduct is ongoing. AC ¶ 3. In any event, the *Restatement* is clear that "where it is evident that the influence of the actor's [tortious conduct] is still a substantial factor, mere lapse of time, no matter how long" does not preclude proximate cause— above all in nuisance. *Restatement* § 433 cmt. f. A well-known treatise confirms that insisting on proximity in time and space is a basic error, and "simply is not the law":

> The word *proximate* . . . taken literally . . . suggests that only the most immediate trigger of harm can be the proximate cause. That simply is not the law. . . . [S]everal tortfeasors may all be proximate causes of a single harm; the first tortfeasor in a sequence of events as well as the last is often a legally responsible cause. And the defendant's misconduct is not too remote for liability merely because time or distance separates the defendant's act from the plaintiff's harm.

1 Dan B. Dobbs, THE LAW OF TORTS § 208, at 720-21 (2d ed. 2011) (emphasis added; footnotes omitted). Indeed, here, to a unique degree, time and space gaps do not preclude causation— defendants knew their products would be burned, and once this occurred scientific laws of physics and chemistry operating through the Earth's atmosphere made the City's injury not merely "evident" but *inevitable*. *See MTBE*, 725 F.3d at 121 (rejecting remoteness argument:

Exxon held liable as manufacturer far removed from gasoline station tanks where "Exxon knew" gasoline would leak from tanks).

ConocoPhillips' broader attempts to minimize its wrongdoing should also be rejected. ConocoPhillips compares itself to a humble tobacco farmer, supposedly to show how distant and trivial its role has been in climate change. CP Br. 9. But tobacco farmers did not create the massive campaign to deceive the public about smoking—the cigarette companies did. Defendants here (including ConocoPhillips, which has been a member of the API for many years) are in the same position.[9] With truly vast sums invested in oil and gas, it was defendants—not consumers who "decide to drive" instead of walk, CP Br. 8—who spent millions to deceive the public about fossil fuels and climate change. And all this despite knowledge decades ago that climate change could cause catastrophic harms. *E.g.,* AC ¶¶ 4, 6, 99-100. Thus, ConocoPhillips and other defendants are not at all like individual tobacco farmers; they are instead very much like the cigarette companies, who similarly tried to blame their customers for smoking.

The bottom line is that courts assign liability to the parties "in the best position to protect against the risk of harm." *Hamilton*, 96 N.Y.2d at 233. Here, internal warnings from decades

---

[9] ConocoPhillips says that the amended complaint attributes only two statements to ConocoPhillips, CP Br. 9, but this ignores numerous allegations that are defined to include ConocoPhillips. The amended complaint alleges that ConocoPhillips' knowledge of global warming science and impacts goes back decades through its participation in the API. *See* AC ¶ 83 ("Each Defendant (or its predecessor) was a member of the API at relevant times, or had a subsidiary that was a member of the API at relevant times."), ¶ 18 ("On information and belief, Conoco Inc. and Phillips Petroleum Company (the two companies which merged to become ConocoPhillips in 2002) were members of the API at all relevant times."), ¶¶ 4, 80-83 (1980 API task force warning about catastrophic impacts and the need for energy changeover). It alleges that ConocoPhillips incorporated global warming considerations into infrastructure decisions in the 1990s, *id.* ¶ 91, and continues to do so. *Id.* ¶ 128. The amended complaint also alleges ConocoPhillips' participation, through API and the Global Climate Coalition, for example, in funding various front groups that attacked climate science, *id.* ¶¶ 94-96, 104, and that the API has made misleading statements about climate science. *Id.* ¶ 106. ConocoPhillips also promotes its fossil fuel products by stating that it "responsibly suppl[ies] the energy that powers modern life," *id.* ¶ 109(e), and the API also promotes the benefits of fossil fuel products on behalf of ConocoPhillips. *Id.* ¶ 108. ConocoPhillips also states that its website has stated since 2003 that fossil fuels "can lead to adverse changes in global climate," CP Br. 9, but fails to disclose that the website continued that the "debate continues over the extent of human contributions." Exh. 2 to Siegel Decl. And it has been 15 years since 2003 yet, as alleged in the complaint, ConocoPhillips still produces massive quantities of fossil fuels.

ago show that defendants were well positioned—indeed, long before anyone else. The harms caused by fossil fuels should not be borne by the areas hit hardest by climate change, such as New York City, but by the major producers like defendants—who knew early on about the threat and spent millions to deceive the public, all to protect their vast profits.

Finally, proximate cause is a classic question of fact. This point is particularly apt in cases like this one, where there is a dispute as to whether third-party acts are sufficiently "normal" or "foreseeable" to preclude attributing causation to the defendants. The New York Court of Appeals has emphasized that, "[b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences . . . these issues generally are for the fact finder to resolve." *Derdiarian*, 51 N.Y.2d at 315; *accord Bell v. Bd. of Educ.*, 90 N.Y.2d 944, 946 (1997); *Mason v. U.E.S.S. Leasing Corp.*, 96 N.Y.2d 875, 878 (2001).[10]

ConocoPhillips' proximate cause argument should be rejected.

### III.    CONCLUSION

For these reasons, the City respectfully requests that the Court deny ConocoPhillips' motion.

---

[10] Although *Sturm, Ruger* was decided at the motion to dismiss stage, the First Department heavily relied on the then-recent trial findings in *Hamilton*, which involved the same allegations against the same gun companies. *See Sturm, Ruger*, 309 A.D. 2d at 100-01. This exceptional circumstance is not present here.

010694-13 1029116 V1

Dated:  April 25, 2018                    Respectfully submitted,


                                          ZACHARY W. CARTER
                                          Corporation Counsel of the City of New York
                                          Attorney for Plaintiff
                                          100 Church Street
                                          New York, New York 10007
                                          (212) 356-2070
                                          By:  ___*/s/ Susan E. Amron*_____
                                              Susan E. Amron, samron@law.nyc.gov
                                              Kathleen C. Schmid, kschmid@law.nyc.gov
                                              Margaret C. Holden, maholden@law.nyc.gov
                                                  (admitted *pro hac vice*)
                                              Noah Kazis, nkazis@law.nyc.gov
                                                  (admitted *pro hac vice*)


*Of Counsel*

STEVE W. BERMAN (admitted *pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

MATTHEW F. PAWA
mattp@hbsslaw.com
BENJAMIN A. KRASS (admitted *pro hac vice*)
benk@hbsslaw.com
WESLEY KELMAN
wesk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Telephone: (617) 641-9550
Facsimile: (617) 641-9551

CHRISTOPHER A. SEEGER
STEPHEN A. WEISS
DIOGENES P. KEKATOS
CSeeger@seegerweiss.com
SWeiss@seegerweiss.com
DKekatos@seegerweiss.com
**SEEGER WEISS LLP**
77 Water Street
New York, New York 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

- 15 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF NEW YORK,

                              Plaintiff,

        v.

BP P.L.C.; CHEVRON CORPORATION;
CONOCOPHILLIPS; EXXON MOBIL
CORPORATION; and ROYAL DUTCH
SHELL PLC,

                              Defendants.

Case No. 18-cv-182-JFK

## AFFIRMATION OF SERVICE

I, Benjamin A. Krass, declare under penalty of perjury that I caused a copy of Plaintiff

the City of New York's Opposition to ConocoPhillips' Motion to Dismiss Plaintiff's Amended

Complaint dated April 25, 2018, to be served upon the parties listed on Exhibit A by email on

April 25, 2018.

                    HAGENS BERMAN SOBOL SHAPIRO LLP


                    By:    /s/Benjamin A. Krass
                         Benjamin A. Krass (admitted *pro hac vice*)
                    1280 Centre Street, Suite 230
                    Newton Centre, Massachusetts 02459
                    Telephone: (617) 641-9550

010694-13 1029116 V1

# **Exhibit A**

| | |
|---|---|
| Philip H. Curtis<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 836-7199<br>Email: philip.curtis@arnoldporter.com<br><br>*Counsel to BP P.L.C.* | John F. Savarese<br>Ben M. Germana<br>Jonathan Siegel<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York  10019<br>Telephone: (212) 403-1000<br>Email:  JFSavarese@wlrk.com<br>        bmgermana@wlrk.com<br>        JRSiegel@wlrk.com<br><br>Tracie J. Renfroe<br>Carol M. Wood<br>King & Spalding LLP<br>1100 Louisiana Street, Suite 4000<br>Houston, Texas  77002<br>Telephone: (713) 751-3200<br>Email: trenfroe@kslaw.com<br>        cwood@kslaw.com<br><br>*Counsel for ConocoPhillips* |
| Anne Champion<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-5361<br>Email: achampion@gibsondunn.com<br><br>*Counsel to Chevron Corporation* | |
| Jaren Janghorbani<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3211<br>Email: jjanghorbani@paulweiss.com<br><br>*Counsel to Exxon Mobil Corporation* | |
| Daniel P. Collins<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 683-9125<br>Email: daniel.collins@mto.com<br><br>*Counsel to Royal Dutch Shell PLC* | |

010694-13 1029116 V1